UNITED STATES of America, Plaintiff,

v.

DALLAS COUNTY COMMISSION, et al., Defendants.

Civ. A. No. 78–0578–BH.

United States District Court,
S.D. Alabama, N.D.

Oct. 23, 1987.

Jefferson B. Sessions, III, U.S. Atty., Mobile, Ala., J. Gerald Hebert, Ellen M. Weber, Paul Hancock, Voting Section Civ. Rights Div., Dept. of Justice, Washington, D.C., for plaintiff.

---

John E. Pilcher, Cartledge W. Blackwell, Jr., Philip Henry Pitts, William T. Faile, Selma, Ala., Edward S. Allen, Birmingham, Ala., for defendants.

## ORDER

HAND, Chief Judge.

This cause came on for hearing before the Court on October 2, 1987 to address the Court's proposal to implement as to the Dallas County School Board the election plan previously adopted with respect to the Dallas County Commission. The Court's proposed plan consists of four single-member districts of which two districts contain black voter majorities of 75.8% and 67.2%; one district contains a white voter majority of 68.8% and one district contains a slight white voter majority of 55.2%.[1] In addition to the four single-member districts, a member of the School Board shall, under this plan, be elected at-large but shall not, in contrast to the Commission plan, be automatically designed as the chairman of the School Board.

The Government objects to the Court's proposal on the singular ground that the Court's plan includes a member on the School Board who is elected at-large.[2] The Government does not abandon its contention that the election plans for the County Commission and School Board ought to be uniform in order to avoid voter confusion and to ease the administration and conduct of elections. Rather, the Government continues to assert, in essence, that because the unique circumstances which justify, in this Court's opinion, the continued inclusion of the at-large elected probate judge as a voting member of the County Commission without increasing that governing body's membership do not exist with respect to the School Board, the County Commission plan should be made to conform to a School Board plan of five single-member districts. In other words, the Government asserts that despite the present legality and fairness of the plan as applied to the County Commission, possible voter confusion and administrative difficulties constitute sufficient rationale to drastically alter the Commission's composition to conform with the Government's perceived requirement of a five single-member districting plan for the School Board, but cannot under any circumstance serve as a rationale for the reserve, i.e., conformity of a School Board plan to the otherwise justified Commission plan. The Court finds the Government's logic on this point perplexing, but will not belabor the issue.

As this Court stated in its order of September 19, 1987, it is evident that neither the potential for voter confusion and administrative difficulties nor the time constraints now imposed upon the Courts by virtue of the delay in receiving notice that the School Board's proposed plan had been denied preclearance would, in and of themselves, render the Court's County Commission plan appropriate for implementation as to the School Board. However, despite the Government's protestations to the contrary,[3] the county-wide district incorporated in the Court's plan statistically constitutes a swing district under the particular circumstances of this case.[4] *See e.g., United States v. Dallas County Commission,* 661 F.Supp. 955, 958–59 (S.D.Ala.1097) (comparison of the Marengo County and Dallas County Commission plans). The Court, therefore, concludes that the poten-

---

1. The maximum population deviation under this plan with respect to the single-member districts is only 2.97%.

2. The Government previously conceded that the four single-member districts incorporated in the Court's plan "appear to offer black and white citizens an equal opportunity for effective political participation insofar as those four seats on the commission are concerned."

3. The Government continues to insist that the finding of a Section 2 violation, in and of itself, mandates the removal of all existing at-large

seats on the School Board. This Court has addressed this contention on several previous occasions and incorporates those opinions on this issue by reference herein. *United States v. Dallas County Commission,* 661 F.Supp. 955, 957 (S.D.Ala.1987), quoting *United States v. Marengo County Commission,* 643 F.Supp. 232, 235 (S.D. Ala.1986).

4. Dallas County is comprised of a general population which is 54.5% black and a voting age population which is 49.8% black.

tial for voter confusion and administrative difficulties, when taken in combination with the overall features of the Court's County Commission plan, justifies the implementation of the same plan as to the School Board. The Court concludes that the County Commission plan is, under the circumstances, a fair election plan for the Dallas County School Board.

The Court has reviewed the two examples of five single-member districting plans admitted into evidence by the Government and contrasted the same with the Court's plan. The first plan (Government's Exhibits # 5 and # 6) was drafted by Joe L. Reed as Chairman of the Alabama Democratic Conference, an organization described by Mr. Reed as a caucus of black democrats in the state. Mr. Reed, during his testimony, criticized the Court's inclusion of an at-large district in its Dallas County plan, inter alia, on the ground that it is much easier for a black candidate to run for office in a compact district than county-wide because it is easier to become known and takes less money to run a campaign in a smaller area. The Court cannot help but note, however, that among Mr. Reed's five districts, three are considerably larger geographically than two with one black majority district apparently constituting more than half the County geographically. The Court also observes that, contrary to the Government's position that a fifth district should be included in the Court's plan and that such a district should be designed as a swing district, Mr. Reed's plan does not, by his own admission, contain a swing district. Mr. Reed's plan consists of two districts with white voter majorities of 79.79% and 69.63% and three districts with black voter majorities of 88.69%, 67.55% and 68.46%. Mr. Reed admitted that the three districts of at least 67% black majority would likely result in the election of black candidates and were therefore "safe" black districts.

The second plan (Government's Exhibits # 8 and # 9(a) and (b), admitted into evidence without objection after the October 2, 1987 hearing was drafted by Dr. Allan J. Lichtman. In contrast to Mr. Reed's plan, Dr. Lichtman's plan does purport to include a swing district containing a black voter majority of 61.3%. The Court is at odds to understand, however, what true distinction lies between a swing district of 61.3% black majority carved geographically out of a county, and a single-member county wide district of 59.4% black majority, beyond a possible change in the identity of the candidate occasioned merely by the candidate's particular residence. Surely a 1.9% difference between these two forms of a black majority swing district cannot constitute a statistically significant difference. The Court must also observe that, like Mr. Reed's plan, Dr. Lichtman's plan incorporates a black majority district which geographically comprises more than half the county and, therefore, appears to contradict the argument that only single-member districts can encourage black candidate participation because it is easier to become known and takes less money to run for office.

As to both plans admitted by the Government, the Court is troubled by the idea that at least two members of the five member School Board would be elected by, and therefore represent the interest of, only citizens residing in the City of Selma, a city which has its own independent school system.[5] A third district in Dr. Lichtman's plan also appears to contain a predominant number of city residents and certainly cannot be said to extend much into any rural segment of Dallas County. The Court's plan certainly provides a means for more adequate representation of the citizens of Dallas County as a whole on both their County Commission and their County School Board.

It is, therefore, ORDERED, ADJUDGED and DECREED that the Court's proposed plan of March 10, 1987, a copy of which has

---

5. Inasmuch as no issue has been raised regarding the participation of city residents in the election of the County School Board, the Court assumes that city residents have a sufficient interest in the county school system to justify their participation in this election. However, the Court doubts that their interest would equate with virtual control of the County School Board.

already been provided to the parties, be and is hereby ADOPTED as the plan under which future elections for the Dallas County School Board are to be conducted. Accordingly, it is ORDERED that the defendants, the Dallas County School Board: Chairman, John J. Grimes, Jr. and members William R. Martin, Harold Joe Bradford, Dr. Catherine Bozeman, Elton R. Ralston; Earl Goodwin, Chairman of the Dallas County Democratic Executive Committee; and John J. Grimes, Chairman of the Dallas County Republican Executive Committee, be and are hereby DIRECTED to conduct elections for the members of the Dallas County School Board pursuant to the plan adopted herein and in accordance with applicable state and local law during the general election to be held in November, 1988. It is FURTHER ORDERED that, following the first election, the members of the newly constituted Dallas County School Board shall elect among themselves a chairman. The Court shall not intrude further into the legislative functions of the School Board and shall leave to the devises of this entity the responsibility to determine what, if any, rotation in the chair shall occur.

As indicated with respect to the *Dallas County Commission,* 661 F.Supp. at 959, the Court is of the opinion that, in light of the proximity of the 1988 general election, little benefit would be served by compelling the Dallas County citizens to incur the expense of a special election. However, in the event that a county-wide election is scheduled for another purpose prior to the 1988 general election, the Court will entertain a motion to advance elections relative to the Dallas County School Board as well as the Dallas County Commission.