United States Court of Appeals,

Eleventh Circuit.

No. 94-6455.

UNITED STATES of America, Plaintiff-Appellant,

Curtis Williams, Intervenor-Plaintiff-Movant,

v.

John W. JONES, Jr.;  W.D. Nichols;  W.A. Kynard;  Gwendolyn Mock Shaw, Defendants-Intervenors-Defendants-Appellees,

Erskine Minor, In his official capacity as member of the Dallas County Commission;  Perry Varner, In his official capacity as member of the Dallas County Commission;  Curtis Williams, In his official capacity as member of the Dallas County Commission;  Deans Barber, In his official capacity as member of the Dallas County Commission;  Roy Moore, In his official capacity as member of the Dallas County Commission;  John Lide;  Dallas County Board of Registrars;  Ed Vancil, In his official capacity as duly appointed member of the Dallas County Board of Registrars;  Joe Peasant, In his official capacity as duly appointed member of the Dallas County Board of Registrars;  Marie Foster, In her official capacity as duly appointed member of the Dallas County Board of Registrars, Defendants-Appellees,

Dorothy Pettway;  Issac Lawson;  Barbara Pritchett;  Frank Anderson;  Alphonso Johnson, Movants.

July 7, 1995.

Appeal from the United States District Court for the Southern District of Alabama. (No. CV-93-0745-CB-M), Charles R. Butler, Jr., Chief Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The issue presented in this case was whether votes cast by voters inadvertently assigned to the wrong district constituted a violation of the Voting Rights Act.  The district judge ruled that there was no violation.  We AFFIRM.

---

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

I.

On March 26, 1992, the County Commission of Dallas County, Alabama adopted a redistricting plan for its upcoming elections. The plan provided for five single-member districts, three with black majorities and two with white majorities.  The redistricting plan was pre-cleared by the Department of Justice pursuant to Section 5 of the Voting Rights Act on May 12, 1992 and survived a Section 2 challenge by a white plaintiff.  *Rollins v. Dallas County Commission,* 92-0242-B-C, 1992 WL 611861 (S.D.Ala. May 13, 1992).

Dallas County election officials attempted to notify affected voters regarding the redistricting and place voters in the correct district.  Much confusion surrounded the transfer of voters among districts, however, and some residents voted in the wrong district in both the June 2, 1992 primary election and the November 3, 1992 general election.

The general election for the District 2 seat on the County Commission pitted white candidate John Lide against black candidate Curtis Williams.  Initial election results showed that Williams defeated Lide by four votes.  Lide challenged the election results in state court.  After reviewing challenged ballots, the Circuit Court of Dallas County determined that Lide had won the election by ten votes.  The Alabama Supreme Court affirmed.  *Williams v. Lide,* 628 So.2d 531 (Ala.1993).

After the Alabama Supreme Court's decision in favor of Lide, plaintiff United States of America filed the instant suit in the United States District Court for the Southern District of Alabama, challenging the election results under Section 2 of the Voting

Rights Act and under the Fourteenth and Fifteenth Amendments of the United States Constitution.[1] The complaint alleged that Dallas County election officials had permitted approximately seventy white voters who lived outside District 2 to vote in the District 2 election, therefore depriving District 2 black voters of an equal opportunity to elect their preferred candidate and participate effectively in the political process.[2] The suit further alleged that the defendants had acted with the purpose and effect of discriminating against black voters in Dallas County.

After a bench trial, the district court ruled in favor of the defendants. Appellant raises two issues on appeal:

> (1) whether Dallas County election officials' failure to ensure that voters were placed in the proper election districts and their resulting incorrect counting of the out-of-district ballots of over 50 white voters constitutes a "standard, practice, or procedure' subject to challenge under Section 2 of the Voting Rights Act, [and] (2) whether, under the totality of circumstances, defendants' conduct in counting the out-of-district ballots of over 50 white voters and allowing these votes to determine the outcome of the election violates Section 2 of the Voting Rights Act.

Brief for Appellant at 2.[3]

We review the district court's findings in Voting Rights Act cases for clear error, giving "special deference to the district court due to its "special vantage point' and ability to conduct an

---

[1]The suit named as defendants Probate Judge John Jones, Sheriff W.D. Nichols, Circuit Court Clerk W.A. Kynard, Chief Inspector Gwendolyn Mock Shaw, candidate John Lide, the County Commission and its members, and the Board of Registrars and its members. Curtis Williams was added as a plaintiff-intervenor.

[2]The government later narrowed its challenge to 52 out-of-district white voters who voted for Lide.

[3]Appellant does not appeal the district court's rejection of the Constitutional challenge.

"intensely local appraisal of the design and impact of' a voting system." *Lucas v. Townsend,* 967 F.2d 549, 551 (11th Cir.1992) (citing *Thornburg v. Gingles,* 478 U.S. 30, 79-80, 106 S.Ct. 2752, 2781, 92 L.Ed.2d 25 (1986) and *White v. Regester,* 412 U.S. 755, 769, 93 S.Ct. 2332, 2341, 37 L.Ed.2d 314 (1973)). We may correct a district court's errors of law and its findings of fact based upon misconceptions of law. *Meek v. Metropolitan Dade County, Fla.,* 985 F.2d 1471, 1481 (11th Cir.1993).

## II.

Section 2 of the Voting Rights Act, 42 U.S.C. § 1973(a), provides that,

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

A Section 2 violation is established if,

> based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973(b).

Accordingly, a plaintiff bringing a Section 2 claim must prove that (1) the challenged situation constituted a

qualification, prerequisite, standard, practice, or procedure and (2) as a result of the challenged situation, members of a protected class had "less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id. See generally Gingles,* 478 U.S. at 47, 106 S.Ct. at 2764. Proof of an intent to discriminate is not required. *Chisom v. Roemer,* 501 U.S. 380, 384, 111 S.Ct. 2354, 2358, 115 L.Ed.2d 348 (1991).

Section 2 not only applies to permanent structural barriers but also to "practices which, while episodic ..., result in the denial of equal access to any phase of the electoral process for minority group members." S.Rep. No. 417, 97th Cong., 2d Sess. 28, 30 (1982) U.S. Code Cong. & Admin.News 1982 pp. 177, 205-207. *See, e.g., Toney v. White,* 488 F.2d 310 (5th Cir.1973) (en banc) (discriminatory purge of voters from polls violated Section 2)[4]; *Welch v. McKenzie,* 765 F.2d 1311 (5th Cir.1985) (fraudulent ballots did not violate Section 2).

## III.

Applying the foregoing legal principles to this case, we conclude that the District 2 elections did not violate Section 2 of the Voting Rights Act.[5]

## A.

Appellant asks us to conclude that the events which led to

---

[4]Fifth Circuit cases decided before October 1, 1981, are binding precedent in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[5]Our conclusion rests on the district court's findings of fact, which we hold are not clearly erroneous. *United States v. Jones,* 846 F.Supp. 955 (S.D.Ala.1994) (district court opinion).

out-of-district voting constituted a standard, practice, or procedure under Section 2. We are hesitant to do so. The misallocation of voters was not the result of any deliberate act by defendants.[6] Under the redistricting plan, residents along the eastern border of District 2 who lived outside Selma city limits were to vote in District 2. Most of the challenged voters lived in the Pine Forest subdivision and were included in District 2 because of a years-old incorrect map which showed all of Pine Forest to be outside Selma's city limits. Others lived on the odd-numbered side of Wright Drive and were erroneously included in District 2 because of the peculiar way residences on the street are numbered. The remaining contested voters also lived just outside the District 2 line and their inclusion in District 2 resulted from similar errors. In light of these facts, we agree with the district court's conclusion that the misallocations were "run-of-the-mill mistakes" and "are no more than the type of errors one would expect in the normal course of any election, and especially in the circumstances surrounding the necessity of the Board of Registrars focusing in a very short time on relocating some 2,000 to 3,000 voters in the new District 2 alone." *Jones,* 846 F.2d at 959, 962.

The racial makeup of the organizations involved in assigning voters to districts supports this conclusion. Two of the three members of the Board of Registrars, including its chairman, were

---

[6]Appellant contends that defendants' conduct leading up to the election constitutes a *deliberate* failure to act which resulted in the out-of-district voting. We disagree and thus do not reach the question of whether a deliberate failure to act can constitute a standard, practice, or procedure under the Voting Rights Act.

black. One of the three deputy registrars who worked in the Probate Judge's office was black. The County Commission had three black members and two white members. The presence of black representation certainly does not require us to conclude that no Voting Rights Act violation occurred. In light of the other circumstances of this case, however, as the district court suggested, "[u]nless the court is to assume that white officials were somehow so much cannier than their black counterparts as to be both fully aware of and able to manipulate 52 white voters into District 2, the most logical conclusion is that the illegal voters were accidents, not pawns." *Jones,* 846 F.Supp. at 963.

We have found no case holding that an inadvertent error can constitute a standard, practice, or procedure under Section 2. As the district court correctly noted, the text of the act contains no reference to inadvertent error. Standard is defined as "something that is established by authority, custom, or general consent as a model or example to be followed." Webster's Third New International Dictionary 2223 (Philip B. Govie, ed. 1986). [7] Practice is defined as the "performance or operation of something," "performance or application habitually engage in," or "repeated or customary action." *Id.* at 1780. Procedure is defined as "a particular way of doing or of going about the accomplishment of something." *Id.* at 1807. Even in light of the Supreme Court's mandate that we construe the Voting Rights Act broadly and

---

[7]The Voting Rights Act does not define standard, practice or procedure. *Holder v. Hall,* --- U.S. ----, ---- - ----, 114 S.Ct. 2581, 2619-20, 129 L.Ed.2d 687 (1994) (Blackmun, J., dissenting).

consistent with its purpose and historical experience, [8] we nonetheless conclude that the challenged errors did not constitute a Section 2 standard, practice, or procedure.

B.

Even if the challenged errors were standards, practices, or procedures, we are not convinced that black voters faced an unequal opportunity to participate in the electoral process. As required by Section 2's language, we have evaluated the totality of the circumstances. *Johnson v. DeGrandy,* --- U.S. ----, ---- n. 9, ----, 114 S.Ct. 2647, 2656 n. 9, 2657, 129 L.Ed.2d 775 (1994) ("The ultimate conclusions about equality or inequality of opportunity were intended by Congress to be judgments resting on comprehensive, not limited, canvassing of relevant facts.") (listing relevant factors).[9]

Despite the misallocation of voters, blacks still constituted a majority of District 2's voting population. Without the 52 white voters, District 2 had a population of 9,354 which was 65.4% black. Including the 52 voters, District 2 had a population of 9,406 which was still 65% black. In light of these figures, the district court concluded that "there is no evidence that the defendants' inactivity was designed or carried out in a fashion that would solely injure the interests of black voters; any errors which

---

[8]*Holder,* --- U.S. at ---- - ----, 114 S.Ct. at 2619-20 (Blackmun, J., dissenting); *Chisom,* 501 U.S. at 403, 111 S.Ct. at 2368 (quoting *Allen v. State Board of Elections,* 393 U.S. 544, 567, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969)).

[9]*But see* S.Rep. at 30 ("[T]he proof sufficient to establish a[n episodic] violation [does] not necessarily involve the same factors as the courts have utilized when dealing with permanent structural barriers.")

likely would have resulted from the defendants' alleged failure to do their jobs would have likely affected all districts." *Jones,* 846 F.Supp. at 961.[10]

Appellant suggests that the mere proof that the candidate preferred by the majority was defeated by a razor thin margin mandates a conclusion that Section 2 has been violated. We disagree. "[T]he inability to elect representatives of their choice is not sufficient to establish a violation unless, under the totality of the circumstances, it can also be said that the members of the protected class have less opportunity to participate in the political process." *Chisom,* 501 U.S. at 397, 111 S.Ct. at 2365.

Accordingly, because we conclude that blacks still had sufficient opportunity to elect Williams, Section 2 was not violated. While we cannot ignore the history of racial discrimination in Dallas County, it does not outweigh the other circumstances in this case.[11]

---

[10]Interestingly, the misallocation actually may have helped black candidates in past city elections. The district court noted that "these [challenged white] voters were not allowed to vote in [the] city elections during a period when [it] went from being a white majority city to a black majority one." *Jones,* 846 F.Supp. at 963.

[11]A claim of Section 2 vote dilution generally requires proof of three threshold factors: (1) that a minority group is sufficiently large and geographically compact to constitute a majority in a single member district; (2) that a minority group is politically cohesive; and (3) that the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. *See Gingles,* 478 U.S. at 49-53, 106 S.Ct. at 2766-67. Because we conclude that Section 2 was not violated under the totality of the circumstances we need not determine whether the *Gingles* threshold factors were present in this case. *DeGrandy,* --- U.S. at ----, 114 S.Ct. at 2657 (proof of *Gingles* factors necessary but not sufficient to establish vote dilution); *Nipper v. Smith,* 39 F.3d 1494, 1512 (11th Cir.1994) (en banc) (same), *cert. denied,* --- U.S. ----, 115 S.Ct. 1795,

IV.

The Fifth Circuit has stated that "stolen elections in which the losing candidate was black are, while decidedly suspicious, not necessarily violations of the Voting Rights Act or Constitution." *Welch,* 765 F.2d at 1316-17. We agree. By its own terms, Section 2 of the Voting Rights Act does not provide a forum for garden-variety election disputes such as this.[12] The statute expresses Congress's clear intent to limit relief to standards, practices, or procedures which negatively impact the voting rights of a group on account of its members' race or color. Because we conclude that insufficient circumstances exist in this case to meet the statute's standard, we AFFIRM.

_____

131 L.Ed.2d 723 (1995).

[12]We note that in the prior state court proceeding, Williams did not contest the 52 votes challenged here. *Williams v. Lide,* 628 So.2d 531 (Ala.1993). In our view, the state court would be the proper forum for this type of election dispute.