United States Court of Appeals,

Eleventh Circuit.

No. 96-7016.

UNITED STATES of America, Plaintiff-Appellant,

Curtis Williams, Intervenor-Plaintiff,

v.

John W. JONES, Jr., W.D. Nichols, Roy Moore, In his official capacity as member of the Dallas County Commission, John Lide, Defendants-Appellees,

W.A. Kynard, Gwendolyn Mock Shaw, Eskine Minor, In his official capacity as member of the Dallas County Commission, Perry Varner, In his official capacity as member of the Dallas County Commission, Curtis Williams, In his official capacity as member of the Dallas County Commission, et al., Defendants.

Oct. 29, 1997.

Appeal from the United States District Court for the Southern District of Alabama. (No. 93-0745-CB-M), Charles R. Butler, Judge.

Before ANDERSON and COX, Circuit Judges, and ALARCÓN[*], Senior Circuit Judge.

ALARCÓN, Senior Circuit Judge:

The United States appeals from the district court's order granting John W. Jones Jr., W.D. Nichols, John T. Lide, and Roy Moore (collectively "the Defendants")[1] attorneys' fees, costs, and expenses under the Equal Access to Justice Act (collectively "EAJA fees"). The district court based the award of EAJA fees on its determination that the United States' claim that the conduct of the defendants violated the Fourteenth and Fifteenth Amendments was not substantially justified. The United States contends that the district court erred in awarding EAJA fees because the evidence in the record demonstrates that it had a reasonable basis to believe that the Defendants violated the Fourteenth and Fifteenth Amendments. The United States further argues that, because the district

[*]Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]In 1992, John W. Jones, Jr. was the probate judge for Dallas County. W.D. Nichols was the Sheriff of Dallas County and Roy Moore was a member of the Dallas County Commission. John T. Lide is the white candidate who contested the vote count for District 2 in the November 1992 general election. The other defendants listed in the original action did not apply for attorneys' fee reimbursement under the EAJA.

court concluded the claim filed pursuant to the Voting Rights Act was substantially justified, it erred in awarding EAJA fees in view of the fact that "both claims involved the same factual bases, and the legal issues were intertwined." Appellant's Brief at 23. We affirm because we conclude that where related legal theories are intertwined in a complaint that relies on the same facts, a district court does not abuse its discretion when it orders the United States to reimburse a prevailing defendant for all the work performed in presenting the defense, if, after viewing the case as a whole, the court determines that one of the legal theories was not substantially justified.

I

Almost twenty years ago, the United States initiated litigation challenging the method employed by Dallas County for the election of persons to the Dallas County Commission. In the first action filed on October 19, 1978, the United States alleged that the "at-large election of County Commission members unconstitutionally dilute[s] or cancel[s] the voting strength of the black population in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. §§ 1971, 1973." *United States v. Dallas County Comm'n,* 548 F.Supp. 875, 877 (S.D.Ala.1982). The district court held that the United States "failed to meet its burden of proof to establish that the at-large election of members of the county governing body of Dallas County, Alabama is violative of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, as amended, or 42 U.S.C. § 1971(a)(1)." *Id.* at 916. This court vacated the district court's judgment because it concluded that some of its findings were clearly erroneous. The matter was remanded for reconsideration in light of this court's opinion. *United States v. Dallas County Comm'n,* 739 F.2d 1529, 1541 (11th Cir.1984).

After conducting an evidentiary hearing upon remand, the district court held that "the at-large election scheme utilized in the election of members for the Dallas County Commission violated Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973." *United States v. Dallas County Comm'n,* 636 F.Supp. 704, 710 (S.D.Ala.1986). After conducting another hearing in which several redistricting plans were reviewed, the district court mandated that the Dallas Commission

2

adopt a plan that would divide the county into two predominantly black and two predominantly white single-member districts, with the probate judge, to be elected at-large, serving as chairman ex officio of the Commission. *United States v. Dallas County Comm'n,* 671 F.Supp. 1337, 1339-40 (S.D.Ala.1987).

The United States appealed from that portion of the district court's judgment that included the probate judge as a voting member of the Dallas County Commission. In reversing the judgment, this court held that the inclusion of the probate judge as a voting member violated Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973. The district court was instructed to direct the Dallas County Commission to create a single-member fifth "swing district" consisting of a black population of at least 61.3 %.[2] *United States v. Dallas County Comm'n,* 850 F.2d 1430, 1432 (11th Cir.1988) (citing *United States v. Dallas County Comm'n,* 850 F.2d 1433, 1440-42 (11th Cir.1988)).

On December 27, 1988, Dallas County conducted a special election for the office of county commissioner in which the county was divided into five single-member districts. Three black and two white persons were elected to the Dallas County Commission.

On March 19, 1990, the United States and the Dallas County Commission filed a joint motion requesting a declaration regarding whether the term of office for the commissioners elected in the 1988 special election was for two or four years. Interpreting an Alabama statute that required the election for the Dallas County Commission be held in 1990, the district court held that the term of office for the commissioners elected at the 1988 special election was two years, and, therefore, an election in 1990 would be required for a full four-year term. *United States v. Dallas County*

---

[2]This court ordered the district court to adopt a redistricting plan drafted by Dr. Allan J. Lichtman. Dr. Lichtman's plan,

> "consists of five single-member districts, two of which contain black voter majorities of 72.4-percent and 70-percent; two white voter majority districts of 65-percent and 64-percent; and finally a fifth swing district containing a black voter majority of 61.3-percent."

*United States v. Dallas County Comm'n.* 850 F.2d at 1441.

*Comm'n,* 904 F.2d 26, 27 (11th Cir.1990). In its appeal to this court, the United States argued that the term of office for the commissioners elected in 1988 should be four years. This court agreed and held that the term of office for the commissioners elected in 1988 was four years. *Id.* at 28.

## II

On March 20, 1992, the Dallas County Commission adopted a redistricting plan to be used for the primary and general elections. The plan provided for three single-member districts with black majorities, and two with white majorities.[3] The redistricting plan was submitted to the Attorney General pursuant to 42 U.S.C. § 1973c.[4] The redistricting plan was approved by the Attorney General on May 12, 1992.

Pursuant to Alabama law, the Board of Registrars ("Board") has the duty of compiling and certifying the list of voters to the probate judge. In accordance with Alabama law, the Board submitted the list of persons eligible to vote in the 1992 primary and general election for the office of Dallas County Commissioner to Judge Jones, the Dallas County probate judge. Ala.Code § 17-4-

---

[3]The redistricting plan created five single-member districts. The percentage of blacks in District 1 was 82.4%. The percentage of blacks in district 2 was 65.4%. District 3 contained 76.7% black voters. District 4 had 69% white voters. The percentage of whites in District 5 was 66.2%. District 2 was the "swing district" in this plan. *United States v. Jones,* 846 F.Supp. 955, 957 (S.D.Ala.1994).

[4]The Voting Rights Act provides that

> Whenever a State or political subdivision ... shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect ... such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color ... *Provided,* That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made.

42 U.S.C. § 1973c.

129. Two members of the Board were black, and one was white. Judge Jones published the list of qualified voters certified by the Board.

On May 20, 1992, eight days after the Attorney General approved the redistricting plan, Judge Jones and the chairman of the Board of Registrars appeared before the Commission to express their concern regarding whether there would be sufficient time to notify those electors whose district had been changed by the redistricting plan approved by the Attorney General of the United States. The Commission agreed to use county employees to assist in the identification of the residents whose districts had been changed. One county employee volunteered to go door-to-door to notify voters of the changes in the configuration of the districts.

It is undisputed that errors were made in the voter lists compiled by the Board for the five districts. For example, the predominantly white residents of the Pine Forest subdivision were erroneously permitted to vote in District 2, although the approved redistricting plan assigned them to District 5.[5]

The primary election was held on June 2, 1997. John Lide, who is white and D.L. Pope, the incumbent commissioner for District 2, who is black, received the highest number of votes on the Democratic party ballot. Neither won a majority of the votes. Mr. Lide won the Democratic Party nomination by 300 votes in a run-off election. Shortly after the primary election, Mr. Pope accused Edgar A. Vancil, the only white member of the Board of Registrars, of placing additional white voters in District 2. The Commission took no action to investigate Mr. Pope's allegation.

In August 1992, Curtis Williams, a black man, qualified to be on the ballot for the November 3, 1992 general election as an independent candidate for the position of commissioner for District 2. His opponent was Mr. Lide. The initial tally of the votes cast in District 2 showed that Mr. Williams defeated Mr. Lide by four votes. Judge Jones, however, refused to certify Mr. Williams

---

[5]The redistricting plan called for a black majority of 65.4%. The misallocation of white voters reduced the black voting population of District 2 to 65%. This number was greater than the 61.3% swing district ordered by the court in *United States v. Dallas County Comm.'n,* 850 F.2d at 1441.

as the winner because one poll watcher reported that the vote totals for his polling site were incorrect because of the failure to include challenged ballots.[6]

On November 6, 1992, Mr. Williams filed a petition for a writ of mandamus in the Circuit Court of Dallas County in which he sought an order directing Judge Jones and his co-defendants to canvass and certify the returns from the general election. The court granted the petition on November 13, 1992. Relying on *Reed v. City of Montgomery,* 376 So.2d 708, 711 (Ala.1979), the Dallas County Circuit Court held that under Alabama law the duty of the probate judge and the Board of Registrars was confined to adding up the votes, without conducting an inquiry into fraud or irregularity. *Williams v. Jones,* No. CV-92-365, slip op. at 3 (Ala.App. Nov. 3, 1992).

On November 17, 1992, Mr. Lide filed an action in state court contesting the election results. Mr. Lide contended that the vote total was inaccurate because it did not include twenty-six challenged ballots cast in the commissioner contest for District 2. On April 8, 1993, the Dallas County circuit court held that Mr. Lide had won the election by ten votes. The Alabama Supreme Court affirmed the decision on October 8, 1993. *Williams v. Lide,* 628 So.2d 531 (Ala.1993). Mr. Lide took office on October 26, 1993.

III

The United States filed this action in the district court on September 10, 1993. The United States alleged in its complaint that the Defendants violated section 2 of the Voting Rights Act, 42 U.S.C.1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution by permitting more than fifty white voters who did not reside in District 2 to vote in that district. The complaint also alleges that,

> [b]ecause voting patterns in Dallas County are racially polarized, the defendants actions deprive black voters of District 2 of an equal opportunity to participate effectively in the political process and to elect their preferred candidate to the county commission.

---

[6]Under Alabama law, if an elector's name is not on the voter's list, he or she cannot vote unless he or she votes a challenged ballot. Ala.Code § 17-4-127. "If a challenged elector subscribes to the oath and properly identifies himself, his ballot must be received and counted as if he had not been challenged." *Hawkins v. Persons,* 484 So.2d 1072, 1073 (Ala.1986).

On March 15, 1994, the district court entered judgment against the United States on each claim. *United States v. Jones,* 846 F.Supp. 955, 955-67 (S.D.Ala.1994). The court held that the United States had failed to prove a violation of section 2 of the Voting Rights Act or the Fourteenth or Fifteenth Amendments. *Id.* at 956. The court ruled that because "the defendants' actions in allowing the 52 out-of-district voters to cast ballots in District 2 were unwitting errors, and a mistake cannot be intentionally discriminatory, the court necessarily finds, that there is no constitutional claim." *Id.* at 963-64. The district court also determined that the inadvertent assignment of voters to the wrong district did not constitute a violation of the Voting Rights Act. *Id.* at 966.

The United States appealed from that portion of the judgment that denied its claim for relief under the Voting Rights Act. No appeal was taken from the determination that it had failed to prove a deprivation of rights preserved by the Fourteenth and Fifteenth Amendments.

After reviewing the record for clear error, this court concluded that "the misallocation of voters was not the result of any deliberate act by defendants." *United States v. Jones,* 57 F.3d 1020, 1023 (11th Cir.1995). We summarized the evidence in the record as follows:

> Under the redistricting plan, residents along the eastern border of District 2 who lived outside Selma city limits were to vote in District 2. Most of the challenged voters lived in the Pine Forest subdivision and were included in District 2 because of a years-old incorrect map which showed all of Pine Forest to be outside Selma's city limits. Others lived on the odd-numbered side of Wright Drive and were erroneously included in District 2 because of the peculiar way residences on the street are numbered. The remaining contested voters also lived just outside the District 2 line and their inclusion in District 2 resulted from similar errors. In light of these facts, we agree with the district court's conclusion that the misallocation were "run-of-the-mill mistakes" and "are no more than the type of errors one would expect in the normal course of any election, and especially in the circumstances surrounding the necessity of the Board of Registrars focusing in a very short time on relocating some 2,000 to 3,000 voters in the new District 2 alone."

*Id.* (quoting *United States v. Jones,* 846 F.Supp. 955, 959, 963 (S.D.Ala.1994)). In affirming the judgment, we observed that "Section 2 of the Voting Rights Act does not provide a forum for garden-variety election disputes such as this." *Id.* at 1025. The Defendants filed a motion in this court for EAJA fees incurred in defending the district court's judgment. The request was denied on September 28, 1995.

IV

7

Mr. Lide and Mr. Moore filed a motion in the district court on August 4, 1995, pursuant to 28 U.S.C. § 2412(d)(1)(A)[7] for EAJA fees incurred in the defense of this action in the proceedings conducted in the district court. Judge Jones and Sheriff Nichols filed a similar motion on August 7, 1995. The Defendants argued that they were entitled to EAJA fees because neither the constitutional nor the statutory claims were substantially justified. The United States did not file an opposition to these motions.

The district court awarded EAJA fees in the amount of $21,168.75 to Mr. Lide and Mr. Moore, and $41,703.74 to Judge Jones and Sheriff Nichols. In addition, the court awarded fees, costs, and expenses. In its December 7, 1995 order, the court held that "[t]he Government bears the burden of showing all of its positions were substantially justified under the EAJA *to avoid responsibility for defendants' attorneys' fees and expenses*." (emphasis added).

After receiving notice of the court's December 7, 1995 order, the United States filed a motion for reconsideration and an opposition to the Defendants' request for EAJA fees. The United States explained that the failure to file a timely opposition was due to the fact that the trial attorneys did not receive a copy of the Defendants' motions. The district court granted the motion for reconsideration.

On August 6, 1996, the district court issued a new order granting the Defendants' motions for fees. The district court found that the Voting Rights Act claim was substantially justified. The court based this conclusion on the fact that, by directing a majority of their brief to an argument that the constitutional claim was not substantially justified, "the defendants apparently concede that the Government's position as to the Voting Rights Act was substantially justified." The court also stated

---

[7]Section 2412(d)(1)(A) provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

8

that "the Eleventh Circuit implicitly found that the government's position in its Voting Rights Act claim ... had a reasonable basis in law and fact and was therefore substantially justified."

The district court also found, however, that the constitutional claim was not substantially justified. The court held that, because the United States had failed to prove that all of its positions in this action were substantially justified, the United States must reimburse Mr. Lide and Mr. Moore in the amount of $22,822.55, and Judge Jones and Sheriff Nichols in the amount of $50,213.19. The district court based its ruling on the finding that the Voting Rights Act claim and the constitutional claim involved the same factual bases, and the legal issues asserted by the United States were intertwined. The United States has timely appealed the award of fees pursuant to the EAJA.

V

The United States seeks reversal of the order granting EAJA fees to Judge Jones, Sheriff Nichols, Mr. Lide, and Mr. Moore on the following grounds:

1. The district court abused its discretion in concluding that the United States' claim that the Defendants violated the Fourteenth and Fifteenth Amendments was not substantially justified.

2. In its September 28, 1995 order denying the Defendants' motion for EAJA fees incurred in responding to the appeal filed by the United States, this court implicitly determined that the Voting Rights Act claim was substantially justified.

3. The district court erred in making separate and independent assessments as to whether the United States' statutory and constitutional claims were substantially justified, instead of examining the reasonableness of its position in pursuing the litigation as a whole. We discuss each of these contentions in separate sections.

A. THE CONSTITUTIONAL CLAIM WAS NOT SUBSTANTIALLY JUSTIFIED.

The United States contends that it presented sufficient evidence to demonstrate that there was a reasonable basis for its position that the Defendants discriminated against the black voters by permitting more than fifty white persons who did not reside in District 2 to vote in that district in

9

the November 1992 election. The district court concluded that "there was no reasonable basis in law and fact for the constitutional claims advanced by the government."

The Supreme Court has instructed that the question whether the position of the United States was not substantially justified is reviewed for abuse of discretion. *Pierce v. Underwood,* 487 U.S. 552, 557-563, 108 S.Ct. 2541, 2545-46, 101 L.Ed.2d 490 (1988). The Court reasoned that a trial court is better positioned than an appellate court to decide whether there was a reasonable basis for the prosecution of a civil action by the United States. *Id.* at 559-60, 108 S.Ct. at 2547-48. Where the question turns on the evidence presented to support the allegations in the complaint, "the district court may have insights not conveyed by the record into such matters as whether particular evidence was worthy of being relied upon, or whether critical facts could easily have been verified by the Government." *Id.*

"The government's position is substantially justified under the EAJA when it is "justified to a degree that would satisfy a reasonable person'—i.e. when it has a reasonable basis in both law and fact." *United States v. Douglas,* 55 F.3d 584, at 588 (11th Cir.1995) (quoting *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550). "The government bears the burden of showing that its position was substantially justified." *City of Brunswick, Ga. v. United States,* 849 F.2d 501, 504 (11th Cir.1988).

We begin our analysis of the question whether the United States' constitutional claim was substantially justified by examining the complaint. The complaint alleges that "[i]n the November 1992 elections, defendants election officials permitted more than fifty (50) white voters who do not reside in District 2 to cast ballots in the District 2 County Commission election." In a later passage, the complaint alleges that "[b]ecause voting patterns in Dallas County are racially polarized, the defendants' actions deprive black voters of District 2 in Dallas County of an equal opportunity to participate effectively in the political process and to elect their preferred candidate to the county commissioner." The complaint than asserts that "[t]he defendants' actions were undertaken for the purpose and with the effect of discriminating against black voters in Dallas County." In the next paragraph, the complaint sets forth the legal conclusion that "[t]he defendants' actions violate

10

Section 2 of the Voting Rights Act, 42 U.S.C.1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution."

No facts are alleged in the complaint to support the conclusion that the Defendants' purpose in permitting white non-residents to vote in District 2 was to discriminate against black candidates. At trial, Edgar A. Vancil testified that "[t]he misunderstanding about the voters in the Pine Forest Subdivision was based on the use of the Board of Registrars of a commercially produced map of the City of Selma, known as the "Merchant's Map' (Gov't. Ex. 48), which erroneously showed all of the Pine Forest Subdivision to be just outside of Selma's southwest city limit, and thus properly included in District 2." *United States v. Jones,* 846 F.Supp. 955, 959 (S.D.Ala.1994). This error was not discovered until after the November 1992 election. Persons residing in the Pine Forest Subdivision had been erroneously placed in the wrong voter registration list for years prior to the 1992 election. *Id.* This error was also reflected in the 1992 registration list approved by the Board of Registrars, which had a black majority. Mr. Vancil's testimony was not disputed or rebutted by the United States.

The United States points to the fact that Judge Jones was a long-time friend of Mr. Lide, and attended campaign fund raisers during his campaign for commissioner, as evidence of a purpose to discriminate. The fact that a white elected county official knows other white candidates for political office in a county of 48,000 persons does not support an inference of intentional discrimination against blacks in publishing the voter registration list prepared by a Board of Registrars with a black majority.

The United States also argues that the failure of the Defendants to take any corrective steps after Commissioner D.L. Pope complained that white voters had impermissibly cast ballots in the June primary election is proof of a motive to discriminate. This assertion ignores evidence produced at trial through the testimony of Perry Varner, the County Commissioner for District 3. Varner, a black man, testified that the three black members of the five-person commission voted in favor of the redistricting plan for the June primary. The two white members voted against the plan. Mr.

11

Varner also testified that he did not report Mr. Pope's complaint to the United States Department of Justice because "I personally thought he was angry because he was in the run-off and did not win it right off." *Jones,* 846 F.Supp. at 961.

We are persuaded from our review of the record, and the district court's August 6, 1996 order, that the district court did not abuse its discretion in determining that the United States' constitutional claim was not substantially justified.

## B. THIS COURT'S DENIAL OF EAJA FEES ON APPEAL IS NOT DISPOSITIVE

In its motion for reconsideration of the December 8, 1995 order granting EAJA fees to the Defendants, the United States argued *inter alia* that reconsideration was needed "to conform this court's ruling with the Eleventh Circuit Court of Appeals' denial of these defendants' motion for EAJA fees incurred in the appeal of this case." The United States further maintained that "[t]he Eleventh Circuit's denial of attorneys' fees and expenses is an implicit determination that the claims and positions asserted by the United States were "substantially justified' or that "special circumstances' militated against an award of attorneys' fees against the United States." In its opposition to the Defendants' request for EAJA fees incurred on appeal, the United States requested that the motion be denied either on the ground that its position regarding the statutory claim was substantially justified, or that special circumstances were present which would make such an award unjust.

This court's order regarding the Defendants' request for EAJA fees states succinctly: "Appellee Ed Vancil's motion for attorneys' fees is denied. Appellees John Lide and Roy Moore's motion for attorneys fees and expenses is denied. Appellees John W. Jones, Sr. and W.D. Nichols' motion for attorneys' fees and expenses is denied."

This court did not explain the basis for the exercise of its discretion to deny the motion for EAJA fees. It did not indicate whether it believed that the United States' appeal of the judgment on its Voting Rights Act claim was substantially justified, or whether it concluded that special circumstances existed that would render such an award unjust. As noted above, the district court,

12

however, construed this court's order as an implicit finding that the statutory claim of the United States was substantially justified.[8]

Because the United States asserted alternative arguments for denying the motion for EAJA fees, we disagree with the district court's conclusion that this court's order can be construed as an implicit determination that EAJA fees should not be awarded because the appellate position of the United States was substantially justified. It is just as plausible to speculate that this court denied the Defendants' request because it believed that special circumstances existed in this case that would make an award of EAJA fees unjust.

Moreover, this court's order denying EAJA fees incurred in the appeal of the statutory claim cannot be construed as establishing the law of the case regarding the question whether the claims presented to the district court were substantially justified. This court explained the doctrine of the law of the case in *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir.1990), in the following words:

> This is a "rule of practice under which a rule of law enunciated by a federal court not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it *must,* and which it itself will, normally apply to the same issues in subsequent proceedings in the same case."

*Id.* at 1550 n. 3 (quoting *Morrow v. Dillard,* 580 F.2d 1284, 1289 (5th Cir.1978 )) quoting 1B J. Moore's Federal Practice ¶ 0.404[1] (2d ed.1974) (footnotes omitted (emphasis in original)). In its summary denial of the motion for EAJA fees, this court did not purport to enunciate a principle of law binding on the district court, nor did it attempt to announce the law of the circuit. The question whether the position of the United States during the *trial* of this matter was substantially justified was not presented to this court in the Defendants' request for expenses incurred in defending against the United States' appeal.

---

[8]In this respect, the district court stated: "In any event, the Court believes that the Eleventh Circuit implicitly found that the Government's position in its Voting Rights Act claim (i.e., that the defendants' failure to act to correct the improper assignment of voters constituted a voting "standard practice, or procedure' which violated the Act) had a reasonable basis in law and fact and was therefore substantially justified."

We reject the argument of the United States "that this Court's denial of EAJA fees on the Section 2 appeal established that the government's position on that issue was substantially justified." Appellant's Brief at 18.

## C. EAJA FEES MAY BE AWARDED BASED ON A REVIEW OF THE UNITED STATES' POSITION IN THE CASE AS A WHOLE

The United States contends that the district court erred as a matter of law in holding that "the government cannot avoid responsibility for EAJA attorneys' fees and expenses unless it demonstrates that *all* of its positions were substantially justified."  The question whether the district court correctly interpreted section 2412(d)(1)(A) and controlling legal precedent is subject to *de novo* review.  *See Dysert v. United States Secretary of Labor,* 105 F.3d 607, 609 (11th Cir.1997) ("The proper interpretation of a statute is a question of law that the court will review *de novo* on appeal.").  *See also United States v. Rubin,* 97 F.3d 373, 375 (9th Cir.1996) ("Interpretation of the EAJA is a question of law reviewable *de novo.*").

The United States argues that "the district court should not have made separate and independent assessments as to whether the United States' statutory and constitutional claims were substantially justified."  The district court relied on this court's decision in *Myers v. Sullivan,* 916 F.2d 659 (11th Cir. 1990) in support of its holding that the United States cannot escape responsibility for the payment of fees under EAJA unless it demonstrates that all of its positions were substantially justified.  In *Myers,* this court stated:

> If the district court concludes that the government's positions were substantially justified—i.e., all of the government's arguments possessed a "reasonable basis both in law and fact," *Jean v. Nelson,* 863 F.2d at 767, quoting *Pierce v. Underwood,* 487 U.S. at 565, 108 S.Ct. at 2550—then, notwithstanding the fact that the claimant ultimately prevailed in the litigation, the claimant is not entitled to receive attorney's fees.

*Id.* at 667 (emphasis added).  This court's decision in *Myers* was compelled by 28 U.S.C. § 2412(d)(1)(A), which provides that a prevailing party may be awarded EAJA fees in a civil action, other than cases sounding in tort, in which the United States is a party "unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust."  Accordingly, the district court did not err in concluding that the United States cannot

14

escape responsibility for paying EAJA fees unless all its claims were substantially justified. The United States may be required to pay EAJA fees to a prevailing party for the work on any claim that was not substantially justified. *See Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the result obtained").

In this matter, the claims filed by the United States were based on the same facts and the legal issues were related. In *Haitian Refugee Center v. Meese,* 791 F.2d 1489 (11th Cir.1986), this court held that where the position of the United States is substantially justified only as to some counts, but is not justified as to the remaining causes of action, if each claim involves the same factual bases, and the issues are intertwined, "the attorneys should be fully compensated for their work on the case as a whole." *Id.* at 1500 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). Here, the United States has properly conceded that "both claims involved the same factual bases, and the legal issues were intertwined." Appellant's Brief at 23. Thus, under the law of the circuit, as reflected in *Haitian Refugee Center,* we are compelled to affirm the district court's award of EAJA fees.

The United States asserts that we can no longer follow this court's decision in *Haitian Refugee Center* because of the Supreme Court's subsequent decision in *INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).[9] We disagree. The Supreme Court's decision in *Jean* did not overrule *Hensley.* Instead, as we explain below, the Court reaffirmed the views it expressed in *Hensley. Haitian Refugee Center* faithfully applied the factors that should be considered,as described in *Hensley,* in determining whether to award a fee to a prevailing party.

---

[9]The Defendants argue that in *Myers v. Sullivan,* 916 F.2d 659 (11th Cir.1990), a decision filed by this court after *Jean* was published, this court reiterated the principle that "[u]nless the government can establish that *all* of its positions were substantially justified, the claimant is entitled to attorneys' fees." *Id.* at 666 n. 5. In *Myers,* however, the issue before the district court was whether the defendants' motions for attorneys' fees were timely filed. Therefore, the language quoted above from *Myers* was dictum. *Myers* does not resolve the question whether the law of this circuit as reflected in *Haitian Refugee Center* is consistent with current Supreme Court precedent.

In the *Jean* case, the district court awarded EAJA fees to plaintiffs as prevailing parties in a class action challenging the policies and practices of the INS in conducting exclusion proceedings because it concluded that the United States' trial position was not substantially justified. *Id.* at 156, 110 S.Ct. at 2317-18. This court upheld the district court's findings that the plaintiffs had prevailed on the merits of their claim and that the position of the United States was not substantially justified. *Jean v. Nelson,* 863 F.2d 759, 768-69 (11th Cir.1988). This court remanded, however, for a determination of the question whether the position of the United States regarding the proper fee to be awarded was substantially justified. *Id.* at 779-80.

The Supreme Court granted certiorari. The Court characterized the issue before it as narrow, namely, "whether the District Court must make a second finding of no "substantial justification' before awarding respondents any fees for the fee litigation." *Jean,* 496 U.S. at 157, 110 S.Ct. at 2318. The United States argued in *Jean* that "unless the court finds that their position in the fee litigation itself was not substantially justified, fees for any litigation about fees are not recoverable." *Id.* In replying to this argument, the respondents contended that "fee litigation is a component part of an integrated case and ... if the statutory prerequisites for an award of fees for prevailing in the case are satisfied, the award presumptively encompasses services for fee litigation." *Id.*

The Court held that the fact that the EAJA refers to the *position* of the United States in the singular "although it may encompass both the [INS's] prelitigation conduct and the Department of Justice's subsequent litigation positions, buttresses the conclusion that only one threshold determination for the entire civil action is to be made." *Id.* at 159, 110 S.Ct. at 2319. The Court explained its holding as follows: "Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161-62, 110 S.Ct. at 2320.

In summarizing its views, the Court concluded its decision with the following words: "The purpose and legislative history of the statute reinforce our conclusion that Congress intended the

16

EAJA to cover the cost of all phases of successful civil litigation addressed by the statute." *Id.* at 166, 110 S.Ct. at 2323.

In this matter, the district court awarded EAJA fees regarding a single phase of the litigation i.e. the merits of the United States' complaint that the Defendants had deprived the black citizens of District 2 "of an equal opportunity to participate effectively in the political process and to elect their preferred candidate to the county commission" in violation of the Equal Protection Clause and the Voting Rights Act of 1965. No question has been presented to this court regarding whether a separate finding of substantial justification should have been made prior to any award of EAJA fees for the work performed in litigating the motion for EAJA fees, and the motion for reconsideration of the December 7, 1995 order. The question we must address is whether a district court may award EAJA fees to a prevailing party if it determines, from viewing the case as an inclusive whole, as required by *Jean, Id.* at 161-62, 110 S.Ct. at 2320-21, that the overall position of the United States was not substantially justified, although one of the legal theories it asserted was substantially justified.

Critical to a resolution of this question is the fact that the posture of a defendant in a civil trial differs significantly from that of the plaintiff. The plaintiff is the master of the complaint. The plaintiff selects the claims that will be alleged in the complaint. Some may be substantially justified, others may not. The plaintiff may abandon some claims by an appropriate motion, or may offer no proof at trial to meet its burden of producing evidence in support of an element of a cause of action.

By issuing a summons, the plaintiff can force the defendant to appear in court involuntarily to mount a defense to each of the causes of action pleaded in the complaint. To avoid an adverse judgment, the defendant must disprove each allegation, whether justified or unjustified, because "absent official notice that it was meritless, the allegation would not disprove itself." *Alphin v. National Transp. Safety Bd.,* 839 F.2d 817, 822 (D.C.Cir.1988). Where, as here, the factual bases are the same, and the legal issues are intertwined, the defendant must fight each claim with the same trial preparation and legal research. When the defendant is the prevailing party on each intertwined

17

claim, and one claim is substantially justified, but the other is not, it would be unfair not to reimburse defendants for the EAJA fees needed to combat the whole case presented by the United States. We hold therefore that the district court did not abuse its discretion in awarding EAJA fees for all the work required to defend against each of the United States' claims.

Our view that the district court did not abuse its discretion in awarding EAJA fees to a prevailing defendant where the United States has filed a complaint that relies on a common core of facts and related legal theories is supported by the Supreme Court's reasoning in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley,* the plaintiffs filed a three-count complaint. The district court concluded that plaintiffs had prevailed on some but not all of its claims. The district court refused to eliminate from the award the time spent in unsuccessful claims. *Id.* at 428, 103 S.Ct. at 1936-37.

The Supreme Court held that a plaintiff should not be awarded EAJA fees for work in an unsuccessful claim that is not related to the claims in which he or she prevailed. The Court also instructed, however, that a district court should award full compensation for the defense of claims that involve a common core of facts or related legal theories even if a party seeking an award of EAJA fees did not prevail on every contention raised in the action. *Id.* at 434-35, 103 S.Ct. at 1939-40. The Court explained its holding as follows:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles,* 8 E.P.D., at 5049. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

18

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See *Davis v. County of Los Angeles, supra,* at 5049. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.*

Thus under *Hensley,* a plaintiff who has prevailed against the United States on one claim may recover for all the hours reasonably expended on the litigation even though he or she failed to prevail on other claims involving a common core of facts or related legal theories. We see no principled basis for reaching a different result when it is the defendant who is seeking EAJA fees for work performed in defending against claims that are factually or legally intertwined.

In the instant matter, the Defendants prevailed on each of the claims filed by the United States. Additionally, the United States' claims involved the same factual basis, and the legal issues were closely related. The fact that the district court found that the statutory claim was substantially justified would not be a sufficient reason for reducing the fee award for the time counsel devoted to defending against each of the related claims.

As noted previously, the district court relied on this court's decision in *Haitian Refugee Center v. Meese* as authority for its determination that it had the authority to reimburse the Defendants for all the EAJA fees incurred in defending against the claims filed by the United States. In *Haitian Refugee Center,* this court based its decision on the rationale set forth in *Hensley* regarding the awarding of EAJA fees where the complaint contains multiple counts involving the same factual bases or related legal issues. This court stated in *Haitian Refugee Center:* "In such cases the "lawsuit cannot be viewed as a series of discrete claims' and the attorneys should be fully compensated for their work in the case as a whole." 791 F.2d at 1500 quoting *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939-40.

The Court did not overrule *Hensley* in *Jean.* To the contrary, the Court stated: "[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task

19

of determining that fee is reasonable is essentially the same as that described in *Hensley*." *Jean,* 496 U.S. at 161, 110 S.Ct. at 2320. *Hensley* describes the duty of a district court when faced with a request for EAJA fees by a party that prevailed on some of its claims, but did not prevail on the others. *Jean* involves a discrete issue, i.e., must the district court make a second determination of reasonable justification for the position of the United States at the "fees for fees" phase of the case. Thus, *Jean* has no application to the question presented in this case. Accordingly, we are compelled to apply the Court's reasoning in *Hensley* to the instant case.

The United States maintains that the district court erred "by separately examining the government's Section 2 and constitutional claims in addressing the Defendants' request for attorneys' fee under the EAJA." Appellant's opening brief at 31-32. The United States primarily relies on *United States v. Rubin,* 97 F.3d 373 (9th Cir.1996) and *Hanover Potato Products, Inc. v. Shalala,* 989 F.2d 123 (3rd Cir.1993) as authority for this proposition. Neither case supports the United States' argument. The United States has also cited a number of other cases that have applied or cited the *Jean* case. We do not discuss them here because none of them are relevant to the duty of a trial court regarding the award of EAJA fees when the factual bases for the claims of the United States are the same and the real issues are related.

In *United States v. Rubin,* 97 F.3d 373 (9th Cir.1996), the district court denied EAJA fees to the prevailing defendant in an action to enforce an administrative summons. The district court found that the United States' attempt to compel production of documents of which it had duplicates was not substantially justified. *Id.* at 375. The district court refused to award any EAJA fees based on its finding that the United States was substantially justified in seeking production of other documents that were not in its possession. *Id.* Relying on *Jean,* the Ninth Circuit concluded that "the district court did not abuse its discretion either in treating the case as a whole or in determining that the position of the government was, as a whole, substantially justified." *Id.* at 376. In *Rubin,* as in the matter before this court, the district court separately examined the positions asserted by the United States to determine whether they were substantially justified.

In *Hanover Potato Products, Inc. v. Shalala,* 989 F.2d 123 (3rd Cir.1993), the district court found one argument presented by the United States substantially justified its position and denied EAJA fees. The district court did not consider whether the other defenses asserted by the United States were substantially justified. *Id.* at 128-31. In reversing the denial of EAJA fees, the Third Circuit held that "a district court must evaluate every significant argument made by an agency as part of its EAJA fee evaluation, to determine if the argument is substantially justified. This is necessary to permit us to review a district court's decision and determine whether, *as a whole,* the Government's position was substantially justified." *Id.* at 131. Thus, contrary to the position of the United States in this appeal that it is error for the district court to assess each argument asserted by the United States in support of its claim or claims, in the Third Circuit, a district court must make a separate finding regarding the substantial justification for each separate defense asserted by the United States.

As required by *Hensley,* the district court in this matter declined to view the claims filed by the United States as discrete claims because they are predicated on the same facts and the legal issues are intertwined. After reviewing the work of defense counsel in the case as a whole, the court declined to limit the award of EAJA fees to the attorney hours expended in defending against the constitutional claim because of its finding that the statutory claim was justified. The district court did not err in reimbursing the Defendants for the work entailed in defending against both claims.

CONCLUSION

This is a very troubling case. Over four years ago, the United States filed this action against Dallas County public officials accusing them of purposefully discriminating against black voters in order to deny them the opportunity to elect their preferred candidate for the office of commissioner of District 2 in the 1992 general election. The evidence at trial showed, however, that the error in assigning over 50 white voters to District 2 resulted from mistakes in a map that had been used by election officials for many years. A properly conducted investigation would have quickly revealed that there was no basis for the claim that the Defendants were guilty of purposeful discrimination

against black voters. Furthermore, the record shows that the 1992 voter registration list was prepared by the Board of Registrars which had three black members and two white members.

In this appeal, we affirm the district court's order awarding EAJA fees to the Defendants because the position of the United States, when viewed as a whole, was not substantially justified. Unfortunately, we cannot restore the reputation of the persons wrongfully branded by the United States as public officials who deliberately deprived their fellow citizens of their voting rights. We also lack the power to remedy the damage done to race relations in Dallas County by the unfounded accusations of purposeful discrimination made by the United States.

We can only hope that in the future the decision makers in the United States Department of Justice will be more sensitive to the impact on racial harmony that can result from the filing of a claim of purposeful discrimination. The filing of an action charging a person with depriving a fellow citizen of a fundamental constitutional right without conducting a proper investigation of its truth is unconscionable. After reviewing the proceedings in this case, we are left with the conviction that the complaint was filed without first examining the accuracy of the map that was the source of the mistakes that were made in compiling the voter registration list. Hopefully, we will not again be faced with reviewing a case as carelessly instigated as this one.

AFFIRMED.