Elmer HUDSON, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 87–7355.

United States Court of Appeals, Eleventh Circuit.

March 14, 1988.

---

Richard J. Ebbinghouse, Birmingham, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Jenny L. Smith, M. Neal Reynolds, Birmingham, Ala., Christine Bradfield, U.S. Dept. of Health and Human Services, Nancy R. Bartlett, Atlanta, Ga., for defendant-appellee.

Before JOHNSON and CLARK, Circuit Judges, and DUMBAULD *, Senior District Judge.

JOHNSON, Circuit Judge:

In this case stemming from an award by an Administrative Law Judge (ALJ) of benefits under the Social Security Act, Elmer Hudson appeals from the determination by the United States District Court for the Northern District of Alabama that she is not entitled to attorney fees under the Equal Access to Justice Act, 28 U.S.C.A. § 2412(d). We reverse and remand. We also hold that the award to Hudson on remand should include attorney fees for time spent on the case at the administrative level after remand pursuant to this Court's earlier decision of *Hudson v. Heckler*, 755 F.2d 781 (11th Cir.1985).

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

## I.

Hudson filed for Social Security disability benefits in September 1981. She was administratively denied benefits and requested a hearing before an ALJ. Hudson cried almost continually throughout this hearing, and the ALJ ordered a posthearing psychiatric examination by Dr. Anderson. The ALJ invited Hudson to respond to Dr. Anderson's report. Hudson instead chose to undergo additional examination by a psychologist, Dr. Myers, whose report was submitted to the ALJ.

In *Hudson I*, this Court summarized the reports as follows:

> Dr. Anderson noted that appellant's weeping was appropriate to the context of their conversations. He found her intelligence to be low average and her mood mildly to moderately depressed. Dr. Anderson diagnosed appellant as suffering from a mild to moderate dysthymic disorder and a histrionic personality disorder. He found no evidence of neurological impairment. The doctor also noted appellant's complaints of pain. He concluded that her psychiatric condition would not significantly interfere with her ability to work. He did not, however, consider the possible effect of an interaction between appellant's pain and psychiatric condition.
>
> Dr. [Myers] found that Hudson was moderately to severely depressed. He observed that appellant suffered from insomnia, fatigue, psychomotor retardation, tearfulness, and anxiety. He concluded that her psychological problems, mild physical disabilities, and pain combined to render her unemployable absent exhaustive rehabilitative efforts.

*Hudson I,* 755 F.2d at 783.

The ALJ denied Hudson benefits. In making this determination the ALJ found that Hudson had the following impairments: obesity, chronic low back pain (no etiology established), chronic intermittent hypertension, a mild to moderate dysthymic disorder, and a histrionic personality disorder. The ALJ decided that separately none of these impairments was so severe as to render Hudson disabled. The ALJ, however, did not consider whether the combination of Hudson's impairments rendered Hudson disabled.

In addition, the ALJ did not explain why she discounted Dr. Myers' determination and, in particular, why she did not mention Dr. Myers' consideration of Hudson's impairments in combination. The decision stated only that the ALJ had "carefully considered all the testimony given at the hearing and the documents described in the List of Exhibits...."

The ALJ's denial of benefits became the final decision of the Secretary of Health and Human Services when the Appeals Council approved the ALJ's recommendation. On December 13, 1983, the district court affirmed the ALJ's denial of benefits. On March 19, 1985, this Court held that the Secretary had failed to follow her own Social Security regulations that required consideration of Hudson's impairments in combination. 755 F.2d at 785. In addition, this Court held that the ALJ did not set forth her reasons for the weight accorded the evidence considered. *Id.* at 785–86. Consequently, this Court vacated the denial of benefits and remanded for an evaluation of Hudson's impairments in combination and for the ALJ to address Dr. Myers' report.

During Hudson's appeal to this Court in *Hudson I,* Hudson had filed a new application for disability benefits on January 23, 1984. She was denied benefits and requested a hearing before an ALJ to review this denial. The ALJ's decision on February 23, 1985, found Hudson disabled. In addition, the ALJ found "good cause" to reopen, set aside, and revise the prior unfavorable decision of September 30, 1982 (the appeal from which was pending before this Court in *Hudson I*). The ALJ found Hudson disabled since August 30, 1982.

After this Court's decision in *Hudson I,* the district court remanded the case to the Secretary. Upon remand, the Appeals Council noted that the ALJ lacked jurisdiction in the February 23, 1985, decision to reopen the ALJ's September 30, 1982, decision. The Appeals Council remanded for a hearing before an ALJ and instructed the ALJ to make a recommended decision as to whether Hudson was disabled at any time from May 15, 1981, to August 30, 1982.

After an administrative hearing, the ALJ found Hudson met the listing of mental impairments—a listing whose promulgation was required by Congress in the Social Security Disability Benefits Reform Act of 1984. The ALJ recommended that Hudson was disabled since May 15, 1981.[1] The Appeals Council accepted the ALJ's recommendation and determined pursuant to Hudson's September 3, 1981, application that Hudson was disabled since May 15, 1981.

Hudson sought attorney fees pursuant to the Equal Access to Justice Act. The district court denied Hudson's petition for attorney fees. This timely appeal followed.

## II.

### A. Any Award at All?

The Equal Access to Justice Act provides in relevant part that:

a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A) (emphasis added).[2]

This Court recently addressed the standards of appellate review:

The standard for substantial justification is one of reasonableness. The government must show that its case had a reasonable basis both in law and fact. The test is "more than mere reasonableness."

On review, this court must uphold the district court's denial of an allowance of

attorney's fees in the absence of an abuse of discretion. This standard of review requires that we give great deference to a district court's findings of fact, but allows for close scrutiny of its rulings on questions of law.

The government bears the burden of showing that its position was substantially justified.

*Stratton v. Bowen,* 827 F.2d 1447, 1449–50 (11th Cir.1987) (citations and footnote omitted).

■ The district court denied Hudson's petition because it found the Secretary's petition was "substantially justified":

When the plaintiff filed her second application she submitted new evidence which was relied on by the administrative law judge in making a determination that the plaintiff was disabled. This evidence was not before the first administrative law judge. During the time the plaintiff's first case was on appeal the Social Security Disability Benefits Reform Act of 1984 was passed. On remand the administrative law judge was instructed to apply the new regulations in evaluating the plaintiff's mental impairments.

When only the evidence before the administrative judge on the initial application is considered this court is persuaded that the Secretary has carried his burden of showing his position was substantially justified.

*Hudson v. Bowen,* No. 83–A–0632–J, slip op. at 4 (N.D.Ala. Apr. 28, 1987). The Secretary argues his position was substantially justified on three grounds.[3] We cannot agree.

#### 1. *Failure to Follow Own Regulations*

In *Hudson I,* this Court determined that the Secretary failed to follow her own reg-

---

**1.** The ALJ's decision paragraph initially recommended, because of a typographical error, an onset date of May 15, 1982. Hudson's attorney pointed out the error and the ALJ revised the onset date to May 15, 1981.

**2.** This Court recently noted that "Congress made it clear that 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil

action was based." *Stratton v. Bowen,* 827 F.2d 1447, 1449 n. 2 (11th Cir.1987).

**3.** The Secretary also points out that the *Hudson I* Court determined that some of the Secretary's positions were valid. *See* 755 F.2d at 784–85. This is without consequence; *all* of the Secretary's positions have to be substantially justified. *See Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1499–1500 (11th Cir.1986).

ulations. Specifically, 20 C.F.R. § 404.1522 provided that "we can combine unrelated impairments to see if together they are severe enough to keep you from doing substantial gainful activity. We will consider the combined effects of unrelated impairments only if all are severe and expected to last 12 months."

The Secretary points to a portion of *Hudson I* to argue that the position was substantially justified. In *Hudson I*, this Court observed:

> Appellee [the Secretary] contends that the ALJ must consider the impairments in combination only when each impairment individually is severe. Section 404.-1522 is *ambiguous* [.] The first sentence indicates that non-severe impairments will be combined to determine whether together they render an individual disabled. The following sentence contains *ambiguous* language. If the word "all" refers to "unrelated impairments" then the sentence may support appellee's contention that each impairment individually must be severe, *but this would conflict with the preceding sentence.* If "all" is interpreted as modifying "combined effects," there is no conflict since the sentence simply states that an ALJ will consider combined effects in his disability determination only if those effects are severe.
>
> This court has implicitly adopted the latter construction and *has consistently required that impairments be considered in combination even when the impairments considered separately are not severe. See Bowen [v. Heckler,* 748 F.2d 629 (11th Cir.1984) ]; *Reeves v. Heckler,* 734 F.2d 519 (11th Cir.1984); *Brenem v. Harris,* 621 F.2d 688 (5th Cir.1980); *Strickland v. Harris,* 615 F.2d 1103 (5th Cir.1980). We continue to do so.

755 F.2d at 785 n. 2 (emphasis added).

The Secretary contends that this Court's recognition of "ambiguous" language indi-

cates that the Secretary's position was substantially justified. The Secretary, however, reads *Hudson I*'s language too broadly. The *Hudson I* Court noted that the second sentence was ambiguous by itself, but was not ambiguous in context with the first sentence (especially because of this Court's longstanding requirement of evaluating impairments in combination). Consequently, the Secretary cannot defend his position by relying on *Hudson I.*

The Secretary next contends that the position was substantially justified based upon Congress's subsequent passage of the Social Security Disability Benefits Reform Act of 1984. In the Disability Amendments, Congress expressly required that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity [to qualify the claimant for disability benefits]." 42 U.S.C.A. § 423(d)(2)(C). The Secretary also points to passages in the legislative history[4] expressing displeasure that impairments were not being considered in combination. The Disability Amendments and their accompanying legislative history, however, do not support the Secretary's argument because this Circuit had long required the Secretary to consider impairments in combination.

█ The Secretary points out that *McSwain v. Bowen,* 814 F.2d 617, 620 (11th Cir.1987), determined that the Disability Amendments do not apply retroactively and thus the ALJ did not need to consider the combined effects of unrelated impairments. That part of *McSwain,* however, directly contradicts *Hudson I* and the cases cited in footnote 2 of *Hudson I.* Consequently, we choose to follow *Hudson I.* We therefore conclude that the Secretary's position based upon failure to follow regulations could not be substantially justified.

### 2. *Lack of Specificity*

█ In *Hudson I,* this Court held that the Secretary could not accept an ALJ rec-

---

4. *See* H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 29, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3080, 3087; H.R.Rep. No. 618, 98th Cong., 2d Sess. 14, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038, 3051–52.

ommendation when the ALJ failed to articulate, with requisite specificity, the reasons for her decision. The Secretary cannot claim the position was substantially justified when he accepted the conclusory statement that the ALJ had "carefully considered all the testimony given at the hearing and the documents described in the List of Exhibits...."

As recognized in *Hudson I*, this Court has long held that such conclusory statements are unacceptable. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("This statement tells us nothing whatsoever—it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it. What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."). We therefore conclude that the Secretary's position based upon the lack of specificity could not be substantially justified.

### 3. *Intervening Events*

The Secretary argues (and the district court agreed) that the position was substantially justified on the basis of the evidence before the ALJ at the time of the initial application. The Secretary claims that the ALJ eventually found Hudson disabled because of new evidence and the intervening Disability Amendments which set up new evaluation procedures for persons claiming mental impairment. In other words, the Secretary argues that, if he had followed his regulations and if the ALJ had set forth the reasons for her decision with requisite specificity, as required by *Hud-*

son *I*, then Hudson properly would have been denied benefits at the time of her September 1981 application.

■ We cannot agree with the Secretary's argument. When Hudson first applied for benefits, the Secretary denied her benefits. The Secretary took the position that Hudson's impairments need not be evaluated in combination and that an ALJ recommendation that failed to articulate the reasons for the ALJ's decision with requisite specificity could be accepted. *Hudson I* rejected the Secretary's position and, as demonstrated above, the Secretary's position on those two grounds was not substantially justified. Even assuming that the Secretary has accurately characterized the basis for the ALJ's grant of benefits on remand, we will not permit the Secretary now to claim that the position was substantially justified on a basis that should have been raised on the appeal of *Hudson I*.[5] In addition, the Secretary's argument would force this Court to do what the Secretary should have done in the first place. We could find the Secretary's position substantially justified only by evaluating Hudson's impairments in combination and setting forth reasons for that determination with requisite specificity based upon the evidence before the ALJ at the time of the first denial. We decline to engage in such a determination.

### B. Fees for Time Spent on Remand

Having determined that the district court abused its discretion in not awarding attorney fees, we provide some guidance for the district court on remand.[6] Specifically, the parties dispute whether Hudson's award can include attorney fees for work done at the administrative level after *Hudson I*'s remand.[7]

---

**5.** Because the Secretary never claimed during *Hudson I* that even if Hudson's impairments had been examined in combination Hudson would not be entitled to benefits, we question whether the Secretary can now claim that this was a "position of the United States" within the EAJA's language.

**6.** Hudson asks that this Court determine the attorney fees award. Because the Secretary

contests Hudson's claimed hours and hourly rates, we remand to the district court for consideration of an appropriate fee award.

**7.** We note that Hudson can get attorney fees for this appeal. Such a conclusion accords with Congress's clear intent that "fees incurred by a party when a fee award or denial [by an agency] is appealed are recoverable as part of the final fee award." H.R.Rep. No. 120, 99th Cong., 1st

In *Taylor v. Heckler,* 778 F.2d 674, 676 (11th Cir.1985), this Court observed in dicta that Social Security Act "proceedings at the administrative agency level are excluded from [the EAJA's] coverage." Hudson argues that the Supreme Court disavowed *Taylor*'s dicta in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). In *Delaware Valley,* the Supreme Court held that a court could award attorney fees for time spent at administrative proceedings to enforce a consent decree. The crux of the Court's decision was that Congress's use of the word "action" in the Clean Air Act's fee-shifting provision did not exhibit congressional intent that the provision apply only to judicial, and not administrative, proceedings. 106 S.Ct. at 3094–96.

*Delaware Valley* is inapposite here. The EAJA clearly differentiates between judicial and administrative proceedings. Section 2412(d)(1)(A) is limited to judicial proceedings. In contrast, 5 U.S.C.A. § 504 governs administrative proceedings. Section 504(a)(1) provides in relevant part that

> [a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

Section 504(b)(1)(C) provides that "adversary adjudication" means "an adjudication ... in which the position of the United States is represented by counsel or otherwise...."

■ The Secretary argues that "[d]uring the remand proceedings before the Social Security Administration in this case, the government was not represented by counsel and therefore an adversary adjudication was not conducted." Appellee's Brief at 26. We reject this argument and conclude that attorney fees are permissible for time spent after remand.

Sess. 16–17 (part I), *reprinted in* 1985 U.S.Code

Congress had the following purpose when it adopted the EAJA:

> The bill rests on the premise that certain individuals ... may be deterred from seeking review of ... unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees....

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4984. In addition, "[t]he bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy." *Id.* at 10, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4988.

Congress expressly chose "[t]o exclude administrative proceedings under the Social Security Act." *Id.* at 12, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4991. Congress sought to narrow the scope of the EAJA to make its costs acceptable. *Id.* at 14, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4993. In addition, Congress limited administrative proceedings to "adversary adjudications" in which the position of the United States was represented because "[i]t is basic fairness that the United States not be liable in an administrative proceeding in which its interests are not represented." *Id.* at 12, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4991.

Legislative history developed during Congress's extension on EAJA in 1985 also illuminates congressional intent:

> One issue which needs clarification is what coverage, if any, is allowed under the Equal Access to Justice Act for Social Security Administration hearings at the administrative level. As enacted in

Cong. & Admin.News 132, 145.

1980, the Act covers "adversary adjudications"—i.e., an adjudication under section 554 of title 5, United States Code "in which the position of the United States is *represented by counsel* or otherwise." (Emphasis added) (See section 504(b)(1)(C) of title 5, United States Code). While this language generally excludes Social Security administrative hearings from the Act, Congress made clear in 1980 that "If * * * the agency does take a position at some point in the adjudication, the adjudication would then become adversarial," and thus be subject to the Act.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 10 (part I) (footnote omitted), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138.[8]

■ This language indicates that the critical determination is whether the Secretary has staked out a position. We believe that this language applies equally to those cases where the Secretary accepts an ALJ's denial of benefits and then the Secretary proceeds to litigate that position before a district court (and, as here, a court of appeals). The Secretary certainly has taken the position that the claimant is not entitled to benefits. At such a point, the case becomes adversarial and that the Secretary chooses not to have representation on remand does not change our belief that the proceeding has become adversarial.[9]

Accordingly, REVERSED and REMANDED.

---

**8.** Of particular relevance is that *all* of the cases cited by this Court in support of its dicta in *Taylor* were decided *before* EAJA's 1985 extension. For example, the Eighth Circuit relied on EAJA's original 1980 legislative history to conclude that a claimant was not entitled to attorney fees for work performed in administrative proceedings after the district court's remand. *Cornella v. Schweiker,* 728 F.2d 978, 988–89 (8th Cir.1984). The 1985 legislative history counsels otherwise.

In addition, the Eighth Circuit in *Cornella* did not examine the following language from EAJA's original 1980 legislative history:

The conference substitute defines adversary adjudication as an agency adjudication defined under the Administrative Procedures Act where the agency takes a position through representation by counsel or otherwise. It is intended that this definition precludes an award in a situation where an agency, e.g., the Social Security Administration, does not take a position in the adjudication. *If, however, the agency does take a position at some point in the adjudication, the adjudication would then become adversarial.*

H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23 (emphasis added), *reprinted in* 1980 U.S.Code Cong. & Admin.News 5003, 5012. The emphasized language, quoted with approval in the 1985 legislative history, suggests that the *Cornella* decision may not be good law on the issue presented by this appeal.

**9.** Our holding that Hudson is entitled to attorney fees for work done after remand is not inconsistent with the statement in the 1985 legislative history that "[t]he Committee [on the Judiciary] rejected, by a vote of 12 to 19, an amendment offered by Mr. Morrison relating to remands of Social Security Act cases." *Id.* at 6,

*reprinted in* 1985 U.S.Code Cong. & Admin. News at 134–35. We have obtained a copy of Representative Morrison's rejected amendment. The rejected amendment would have effected two changes. First, 28 U.S.C.A. § 2412(d)(1)(B) would have read in relevant part (the emphasized language indicates the text of the rejected amendment):

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, *or in the case of a prevailing party described in paragraph (2)(I) of this subsection, within 30 days after the remand is ordered,* submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection....

Second, 28 U.S.C.A. § 2412(d)(2)(I) would have been added:

(I) "prevailing party" in a civil action includes a party who, pursuant to section 205(g), 221(d), or 1631(c)(3) of the Social Security Act (2 U.S.C. 405(g), 421(d), or 1383(c)(3)), has won an order remanding the cause for further hearing, except in a case remanded pursuant to section 2(d) of the Social Security Disability Benefits Reform Act of 1984.

We read the rejected amendment as a response to those cases holding that a claimant was not a prevailing party within the meaning of EAJA if the claimant had been accorded a remand only (i.e., had not yet been determined eligible for benefits). *See, e.g., Miller v. Schweiker,* 560 F.Supp. 838 (M.D.Ala.1983). Because Hudson's appeal does not present the issue the rejected amendment sought to address, we adhere to our conclusion that Hudson is entitled to a fee award for work done after remand.