**NATIONAL FEDERATION OF REPUBLICAN ASSEMBLIES, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, et al., Defendants.**

**No. 00–0759–RV–C.**

United States District Court,
S.D. Alabama,
Southern Division.

Jan. 17, 2003.

David B. Rivkin, Jr., E. Mark Braden, Frederick W. Chockley, Baker & Hostetler LLP, Washington, DC, J. Michael Druhan, Jr., Johnston Druhan, LLP, James W. Zeigler, Mobile, AL, lee A. Casey, Baker & Hostetler LLP, Washington, DC, James C. Johnston, Mobile, AL, for Plaintiffs.

Ginny S. Granade, U.S. Attorney's Office, Mobile, AL, Robert L. Welsh, U.S. Department of Justice, Washington, DC, Charles Baer, U.S. Attorney's Office, Mobile, AL, Christopher M. Pietruszkiewicz, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendants.

### ORDER

VOLLMER, Senior District Judge.

This matter is before the Court on the plaintiffs' Motion for Attorneys' Fees, Costs, and Other Expenses. (Doc. 53). The parties have filed papers supporting their respective positions, (Docs. 54, 58, 59), and the motion is now ripe for resolution. After careful consideration of the motion, the parties' arguments and the evidentiary materials submitted by the plaintiffs, the Court concludes that the motion is due to be denied.

### BACKGROUND

The relevant procedural history of this case has been set forth in previous orders and will not be repeated herein. In August 2002, the Court entered an order declaring I.R.C. § 527(j) unconstitutional to the extent it requires disclosures of contributions and expenditures in connection with state and local electoral advocacy and to the extent it requires disclosures of expenditures in connection with federal electoral advocacy. (Doc. 47 at 68). Judgment was entered accordingly. (Doc. 48). As clarified by subsequent order, enforcement of these portions of Section 527(j) against the remaining organizational plaintiffs was enjoined. (Doc. 52).

### ANALYSIS

The Equal Access to Justice Act ("EAJA") provides in relevant part as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). "For the purposes of this subsection ... 'fees and other expenses' includes ... reasonable attorney fees." *Id.* § 2412(d)(2)(A). A "party" is an individual with a net worth of under $2 million or an organization with a net worth of under $7 million and no more than 500 employees. *Id.* § 2412(d)(2)(B).

The defendants argue that the plaintiffs' demand for fees and expenses is governed by a special provision of the tax code. That section, however, applies only to proceedings "in connection with the determination, collection, or refund of any tax, interest, or penalty under this title." I.R.C. § 7430(a). The defendants have offered no authority or explanation for the proposition that the plaintiffs' constitutional challenge to Sections 527(i) and (j), instituted prior to any possible incurrence of a tax or penalty under their provisions, constitutes a proceeding in connection with the "determination" of a tax or penalty. At any rate, the defendants concede that "there are no significant differences" between Section 7430 and EAJA. (Doc. 58 at 5 n. 1).

The parties agree that there are four broad issues for consideration under EAJA: (1) whether the plaintiffs are "prevailing part[ies]"; (2) whether they meet the size and wealth parameters; (3) wheth-

er the defendants' position was "substantially justified"; and (4) whether the plaintiffs' fees and expenses are "reasonable."[1]

## A. Prevailing Party.

EAJA does not define "prevailing party." As noted by the plaintiffs, the Eleventh Circuit has construed the test under EAJA to be " 'whether [the plaintiff] has received substantially the relief requested or has been successful on the central issue.' " *Jean v. Nelson*, 863 F.2d 759, 765 (11th Cir.1988)(quoting *Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985)(en banc)), *aff'd on other grounds*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

The plaintiffs' unreasoned assumption that they meet this standard, (Doc. 54 at 7–8), is troublesome. The "relief requested" in the amended complaint was that Sections 527(i) and (j) be declared unconstitutional and that the defendants be enjoined from enforcing them. The plaintiffs obtained no relief with respect to Section 527(i),[2] and Section 527(j) was left intact with respect to the disclosure of contributions for federal electoral advocacy. According to the defendants, this means the plaintiffs received less than half the relief they requested. Although the Court is skeptical of the defendants' rather crude mathematical calculus, given these glaring holes it is not immediately obvious that the plaintiffs received "substantially" the relief they requested. *Cf. Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(equating "substantially" with "for the most part").

Similarly, it is not obvious that the plaintiffs prevailed on "the central issue," both because it is not clear what "the central issue" in fact was and because it is not clear what level of "success" on the central issue is required. The Court rejects as unacceptably superficial the defendants' suggestion that, because it was the focus of the majority of counts in the original complaint and/or because it was listed first in the statement of challenges in the amended complaint, the constitutionality of Section 527(i) must have been "the central issue" in the case. On the other hand, it is difficult to consider Section 527(j) as "the central issue" when the plaintiffs afforded equal dignity to Section 527(i) in their pleadings and in their briefing on the defendants' motion to dismiss. The central issue in the case would appear most naturally to be the constitutionality of Public Law 106–230—that is, Sections 527(i) and (j) in combination. If that is correct, the plaintiffs' failure to prevail with respect to the former provision and their incomplete success with respect to the latter make it difficult to conclude that they were "successful" on the central issue. *See Walker v. Anderson Electrical Connectors*, 944 F.2d 841, 846 n. 11 (11th Cir.1991)("under the central issue test, the plaintiff must achieve the primary relief sought . . . . It is not enough to win on an important side issue."); *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1556 n. 7 (11th Cir. 1987)("[T]he central issue test is one of practicality, not legal formalism" that should utilize a " 'common sense comparison between relief sought and relief ob-

1. A fifth potential issue—whether "special circumstances make an award unjust"—has been abandoned by the defendants' failure to raise it.

2. The plaintiffs' challenge to Section 527(i) was dismissed as premature pursuant to the Anti–Injunction Act. (Doc. 29). The plaintiffs suggest that this unfavorable result is ir-

relevant because they did not "lose" their challenge but only had its consideration postponed. (Doc. 59 at 4). The question, however, is not whether the plaintiffs forever *lost* their challenge but whether they *prevailed* on it, and they quite plainly did not prevail with respect to Section 527(i) in any conceivable sense of the word.

tained' ")(quoting *Institutionalized Juveniles v. Secretary,* 758 F.2d 897, 911 (3rd Cir.1985)).

Apparently without realizing its import, the plaintiffs quote *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for the proposition that plaintiffs can be prevailing parties " 'if they succeed on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit.' " *Id.* at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)(emphasis added)). *Hensley* did not so hold,[3] but the later case of *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), did. *See id.* at 791, 109 S.Ct. 1486.

Both *Hensley* and *Garland* were decided under 42 U.S.C. § 1988, not under EAJA. The Eleventh Circuit has never held that the forgiving standard for prevailing party status enunciated in these cases applies to cases such as this under EAJA but, for the reasons set forth below, the Court concludes that the Eleventh Circuit would do so if the question were properly presented to it.

■ First, the *Garland* Court rejected the "central issue" test employed by the Fifth and Eleventh Circuits under Section 1988 as posing a question "almost impossible to answer" and perversely "provok[ing] prolonged litigation . . . and ensuring that the fee application will spawn a second litigation of significant dimension." 489 U.S. at 791, 109 S.Ct. 1486. The Eleventh Circuit has recognized that EAJA should not be applied so as to achieve such a result. *Jean v. Nelson,* 863 F.2d at 764.

Second, the *Jean* Court understood that Congress intended the term "prevailing party" to be construed as it is under Section 1988 and other fee-shifting statutes. 863 F.2d at 765 n. 8. Assuming that the *Jean* Court's reading of legislative history is correct and that it extends to post-EAJA changes in fee-shifting jurisprudence, Congress would have intended that the forgiving *Garland* standard be transferred to EAJA.

Third, albeit in dictum, the *Jean* Court indicated it would be comfortable with a lower standard. The Court quoted *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)(per curiam), another Section 1988 case, for the proposition that "a plaintiff is 'prevailing' if he proves 'his entitlement to *some* relief on the *merits* of his claims,' " and then announced that "[o]ur court has applied these standards in the EAJA context." 863 F.2d at 766 (emphasis supplied in *Jean* ).[4]

---

**3.** The only issue before the *Hensley* Court was the calculation of attorney's fees when the prevailing party, however defined, is less than completely successful. *Id.* at 426, 432, 103 S.Ct. 1933. The *Hensley* Court quoted the First Circuit's test for prevailing party status merely as a "typical" formulation which it neither embraced nor rejected. *Id.* at 433, 103 S.Ct. 1933; *see also Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)("*Hensley* did not adopt one particular standard for determining prevailing party status . . . .").

**4.** The *Jean* Court identified *Haitian Refugee Center v. Meese,* 791 F.2d 1489 (11th Cir.),

*vacated in part on other grounds,* 804 F.2d 1573 (11th Cir.1986), as having approved an interim EAJA award when the plaintiffs prevailed "on *a* central issue." 863 F.2d at 766 (emphasis added). It appears that the *Haitian Refugee Center* Court actually employed "*the* central issue" test. *See* 791 F.2d at 1496 ("In this case the plaintiffs have prevailed on the issue of enjoining the Haitian Program as conducted by the INS. Since this issue is central to the case, plaintiffs are entitled to an interim fee award."). Enjoining the Haitian Program to the extent it violated the plaintiffs' constitutional guarantees was the very purpose of the lawsuit. *See Haitian Refugee Center v. Civiletti,* 503 F.Supp. 442, 451, 454, 532 (S.D.Fla.1980).

Fourth, the Eleventh Circuit has stated that *Hensley*'s "typical" formulation is appropriate "[f]or condemnation cases" under EAJA, *United States v. 640.00 Acres of Land*, 756 F.2d 842, 847–48 (11th Cir. 1985), suggesting that the Court would look favorably on extending the same test to other proceedings under EAJA.[5]

Fifth, apparently every other appellate court has held or assumed that the *Garland* standard applies to fee applications under EAJA. *See Sims v. Apfel*, 238 F.3d 597, 600 (5th Cir.2001); *Kerin v. United States Postal Service*, 218 F.3d 185, 189 n. 1 (2nd Cir.2000); *Jacobs v. Schiffer*, 204 F.3d 259, 263 (D.C.Cir.2000); *United States v. 22249 Dolorosa Street*, 190 F.3d 977, 981 (9th Cir.1999); *Kelly v. Secretary*, 97 F.3d 118, 121 (6th Cir.1996); *A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1244 (Fed.Cir.1991); *Rodabaugh v. Sullivan*, 943 F.2d 855, 858 n. 3 (8th Cir.1991); *Shepard v. Sullivan*, 898 F.2d 1267, 1271 (7th Cir.1990); *McDonald v. Secretary*, 884 F.2d 1468, 1474 (1st Cir.1989); *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir.1988); *Kopunec v. Nelson*, 801 F.2d 1226, 1228–29 (10th Cir.1986); *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1388 (3rd Cir.1985).

■ The defendants have not offered or supported any argument that the Eleventh Circuit would not apply the *Garland* test to fee applications under EAJA. Accordingly, and for the reasons set forth above, the Court concludes that the Eleventh Circuit would do so. The plaintiffs easily surpass this low standard. A "significant issue" in their lawsuit was the constitutionality of Section 527(j) as applied to state and local electoral advocacy, and a second "significant issue" was the constitutionality of Section 527(j) as applied to expenditures

made in connection with federal electoral advocacy. The plaintiffs were subject to these provisions and sought in this litigation to escape them; the Court's declaration of their invalidity and injunction against their enforcement against the plaintiffs thus provided them "some of the benefit [they] sought in bringing suit."

In summary, the plaintiffs are prevailing parties for purposes of EAJA.

## B. Wealth and Size Parameters.

The supplemental declaration of David Rivkin establishes that each of the prevailing plaintiffs has a net worth below $7 million and fewer than 500 employees. (Doc. 59, Exhibit A). This element for an award of fees under EAJA is satisfied.

## C. Substantial Justification.

■ "The government's position is substantially justified under the EAJA when it is 'justified to a degree that would satisfy a reasonable person'—i.e. when it has a reasonable basis in both law and fact." *United States v. Douglas*, 55 F.3d 584, 588 (11th Cir.1995)(quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). The burden of proof lies with the Government to show that its position was substantially justified. *United States v. Jones*, 125 F.3d 1418, 1424 (11th Cir.1997). However, and primarily because congressional enactments enjoy a presumption of constitutionality, "situations in which the government's defense of the constitutionality of a federal statute fails the 'substantially justified' test should be exceptional." *Grace v. Burger*, 763 F.2d 457, 458 n. 1 (D.C.Cir.1985); *accord Kiareldeen v. Ashcroft*, 273 F.3d 542, 550 (3rd Cir.2001); *League of Women Voters v. Federal Communications Commission*, 798 F.2d 1255, 1259 (9th Cir.1986).[6]

---

5. Public Law 99–80 later added a special definition of "prevailing party" for use in condemnation proceedings, *see* 28 U.S.C.

§ 2412(d)(2)(H), effectively superseding *640.00 Acres*.

6. Although the Eleventh Circuit apparently

■ The Eleventh Circuit has compiled a non-exhaustive list of six factors to be considered in determining whether the Government's position was substantially justified: (1) the stage at which the litigation was resolved; (2) the opinions of other courts on the same underlying issues; (3) the legal merits of the Government's position; (4) the clarity of governing law; (5) the foreseeable length and complexity of the litigation; and (6) the consistency of the Government's position. *Jean v. Nelson*, 863 F.2d at 767. The *Jean* Court relied for the first three of these factors on *Pierce v. Underwood*, 487 U.S. at 568–69, 108 S.Ct. 2541, and for the remainder on *Haitian Refugee Center v. Meese*, 791 F.2d at 1497. The *Haitian Refugee Center* Court, in turn, relied on *Spencer v. NLRB*, 712 F.2d 539 (D.C.Cir.1983). A review of these factors reflects that the Government's position in this litigation was substantially justified.

■ An early, summary disposition in a fact-intensive case suggests that the Government's position was not substantially justified. *See Pierce v. Underwood*, 487 U.S. at 568–69, 108 S.Ct. 2541. This case centered on a multitude of legal questions and was not decided early in the litigation.[7] This factor does not support an award of attorney's fees.

■ A "string of losses [in other courts] can be indicative" of the lack of substantial justification. *Pierce v. Underwood*, 487 U.S. at 569, 108 S.Ct. 2541. No other case has considered the constitutionality of Section 527(j), and none has considered the delicate interplay of legal issues here presented. This factor does not support an award of attorney's fees.

"[T]he legal merits of the government's position" does not address simply whether the Government won or lost, because "the Government . . . could take a position that is substantially justified yet lose." *Pierce v. Underwood*, 487 U.S. at 569, 108 S.Ct. 2541. The issue is not whether the Government's position was correct but whether it was "reasonable," which depends largely on the "clarity of the governing law."

■ "For purposes of EAJA, the more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." *Spencer v. NLRB*, 712 F.2d at 559. Conversely, the less clear the governing norms—including the confluence of norms not usually considered together—the more justified the Government's position. Unlike the vast majority of cases resulting in EAJA awards,[8] this litigation did not involve a straightforward application of a few basic, well-settled legal principles to the determination of an individual's entitlement to Social Security benefits. On the contrary, resolution of this case required excruciating consideration of well over one hundred cases and dozens of legal principles that spanned numerous substantive areas, that were often subject to differing reasonable interpretations, and that sometimes appeared irreconcilable even within the same jurisdiction. Moreover, the intricate and apparently unprecedented interaction of

---

has not articulated this principle, the plaintiffs do not challenge its applicability, pausing only to stress that "exceptional" does not mean "non-existent." (Doc. 59 at 11–12).

7. Although the parties filed competing motions for summary judgment, they did so only after all preliminary motions had been resolved and all discovery conducted, and the summary judgment format was elected by them in lieu of trial or an evidentiary hearing.

8. *See Pierce v. Underwood*, 487 U.S. at 564, 108 S.Ct. 2541; *Myers v. Sullivan*, 916 F.2d 659, 666 (11th Cir.1990); *Jean v. Nelson*, 863 F.2d at 764 n. 5.

these principles had to be explored, all in the context of a detailed if carelessly written statute. Few cases coming before this Court have been so complex or difficult.

Although "[s]ometimes legal authority against the government on a given legal position will build to such a point that it will be difficult to maintain that the government's continued adherence to that position is reasonable, ... [t]he government must be permitted to make some strategic choices." *Jean v. Nelson*, 863 F.2d at 768–69. When, as here, "the issue is a novel one on which there is little precedent, courts have been reluctant to find the government's position was not substantially justified." *Schock v. United States*, 254 F.3d 1, 6 (1st Cir.2001). Neither the merits of the defendants' position nor the clarity of governing law supports an award of attorney's fees.[9]

"The longer and more complex the course of litigation necessary to vindicate his position, the more hesitant a private party will be to defend his interests .... [Accordingly], in categories of cases in which substantial investments of effort and money commonly are required to prosecute suits to their ultimate conclusions, the government should be obliged to make an especially strong showing that its persistence in litigation was justified." *Spencer v. NLRB*, 712 F.2d at 560. While the *issues* in this case were complex, the "course of litigation" was not. The parties set forth most of their arguments—in their briefs on motion for preliminary injunction and motion to dismiss—within a few weeks after the amended complaint was filed. After desultory discovery, the parties filed

the motions for summary judgment that prompted the Court's order on the merits. This factor does not support an award of attorney's fees.

Consistency measures whether the Government has treated the private litigant more harshly than it generally treats litigants in similar cases. *Spencer v. NLRB*, 712 F.2d at 560. Because this is the first suit challenging Section 527(j), and because it was filed almost immediately after that provision's enactment, there is no history of treatment of other political organizations under its provisions. This factor does not support an award of attorney's fees.

While the defendants bear the burden of proof on the substantial justification issue, the plaintiffs have done little to draw the defendants' satisfaction of that burden into question. First, they argue that "virtually all" of the defendants' positions lacked merit and that "every one of defendants' constitutional arguments in defense of § 527 were [sic] rejected by the Court." (Doc. 54 at 8). In fact, the Court accepted the defendants' positions that the Anti-Injunction Act bars the plaintiffs' challenge to Section 527(i); that Section 527(j) cannot violate the First Amendment to the extent it offsets a tax benefit; that Section 527(j) does offer a tax benefit; that the disclosure of contributions in connection with federal electoral advocacy therefore does not violate the First Amendment; that rational basis scrutiny applies to the plaintiffs' Fifth Amendment challenge to the extent that Section 527(j) offsets a tax benefit; that Congress had a rational basis

9. The plaintiffs themselves struggled to identify, articulate, construe and apply the principles governing their constitutional challenge to Section 527(j) and to explain why the defendants' proposed principles were inapposite. These deficiencies reflect, not on the unquestioned skill of the plaintiffs' accomplished counsel, but on the unusual complexity and difficulty of the case. That the plaintiffs, despite expenditures exceeding a quarter-million dollars, (Rivkin Declaration, ¶ 4), could not chart a clear path through this tangled thicket underscores the futility of suggesting that the defendants unreasonably defended Section 527(j)'s constitutionality.

for treating political organizations differently; and that the disclosure of contributions in connection with federal electoral advocacy therefore does not violate the Fifth Amendment. At bottom, all the plaintiffs can say is that the defendants did not prevail with respect to the disclosure of expenditures in connection with federal electoral advocacy or disclosures in connection with state and local electoral advocacy but, as previously noted, a loss cannot equate with lack of substantial justification.

Second, the plaintiffs state that the defendants must show that " '*all* [their] claims were substantially justified.' " (Doc. 54 at 8 (quoting *United States v. Jones,* 125 F.3d 1418, 1427 (11th Cir.1997)(emphasis supplied by the plaintiffs))). In *Jones,* the Government was the plaintiff and lost on all three of its legally and factually related claims against the private defendants. The Government argued that EAJA fees could not be awarded because one of its three claims was substantially justified. The *Jones* Court rejected the argument, ruling that a single substantially justified claim did not render the Government's litigation position substantially justified. 125 F.3d at 1427–29.

The Eleventh Circuit follows a similar rule when, as here, the Government is the defendant. In *Haitian Refugee Center v. Meese,* the Government was not substantially justified in defending its violation of its own regulations. Thus, "assuming the government was correct as to the due process and equal protection issues, it was patently unreasonable to carry on this litigation when the plaintiffs were entitled to relief under an alternative basis." 791 F.2d at 1500. Likewise, when the Government denies Social Security benefits on multiple grounds, the Government must show that each is substantially justified. *Myers v. Sullivan,* 916 F.2d 659, 667 & n. 5 (11th Cir.1990); *Hudson v. Secretary,*

839 F.2d 1453, 1456 n. 3 (11th Cir.1988), *aff'd on other grounds,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

■ These cases uphold an important principle, but not one that aids the plaintiffs here. The principle is that, "[w]hile the parties' postures on individual matters may be more or less justified, the EAJA— like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Commissioner v. Jean,* 496 U.S. 154, 161–62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Thus, "only one threshold determination [of substantial justification] for the entire civil action is to be made." *Id.* at 159, 110 S.Ct. 2316. In other words, it is the "overall position of the United States" that must be substantially justified, *United States v. Jones,* 125 F.3d at 1428, and not—as the plaintiffs appear to assume— every argument the Government raises. Where, as in *Haitian Refugee Center,* a private plaintiff asserts several related claims and the Government is not substantially justified in resisting one of those claims, its "overall position" is not substantially justified because the plaintiff is entitled to relief if even one of its claims is valid. Similarly, when all grounds for denying benefits are judicially rejected and even one of them lacks substantial justification, the Government's "overall position" is not substantially justified because the plaintiff's entitlement to benefits should have been recognized by the Government short of litigation.

In short, as applied to this case *Jones* and the other cases cited stand only for the proposition that, in order for the defendants' overall position to be substantially justified, their opposition to each of the plaintiffs' claims must have been substantially justified. Because, as discussed previously, the defendants meet this standard, the plaintiffs' invocation of *Jones* is unavailing.

Finally, the plaintiffs argue that the defendants were "litigious" and thereby "unduly prolonged the litigation" by raising "baseless arguments" and "refus[ing] to respect the Orders and rulings of the Court." The "baseless arguments" identified by the plaintiffs are: (1) that two of the prevailing plaintiffs lacked standing; and (2) that the individual defendants should be dismissed for lack of personal jurisdiction. They state that the defendants "refus[ed] to respect" the Court's orders by: (1) raising the Anti–Injunction Act issue with respect to Section 527(j) on motion for summary judgment after the Court rejected it on motion to dismiss; and (2) filing a motion for summary judgment rather than a brief on the merits. (Doc. 54 at 8–11; Doc. 59 at 8–11).

The plaintiffs' argument misses the mark in at least two respects. First, the defendants' arguments were mere sideshows that both the plaintiffs and the Court largely ignored; they did not in any sense "prolong the litigation," unduly or otherwise. More importantly, what must be substantially justified is the defendants' position that Section 527(j) is constitutional; even assuming without deciding that the defendants' position as to the proper parties and/or the proper time for raising constitutional challenges were not merely wrong but "baseless" and/or "[dis-]respect[ful]," this could not weaken the

defendants' substantial justification for asserting that Section 527(j) is constitutional.[10]

 In summary, the defendants were substantially justified in defending the constitutionality of Section 527(j), including with respect to the disclosure of expenditures in connection with federal electoral advocacy and with respect to disclosures in connection with state and local electoral advocacy. This conclusion, based on a consideration of the factors identified in *Jean v. Nelson* and the additional factors urged by the plaintiffs, is only reinforced by the context of the litigation: the first challenge to a new federal statute enjoying a presumption of constitutionality.

### D. Reasonableness.

Because the defendants bore their burden as to substantial justification, the plaintiffs are not entitled to any award of fees or expenses under EAJA. Accordingly, it is unnecessary to consider the reasonableness of their request.

### CONCLUSION

For the reasons set forth above, the plaintiffs' Motion for Attorneys' Fees, Costs, and Other Expenses is denied.

10. In *Jean v. Nelson,* on which the plaintiffs rely, the Government "unreasonably protracted the litigation" by denying that it had devised a special policy to deal with Haitian applications for asylum and that it had done so without following the Administrative Procedures Act ("APA"). 863 F.2d at 769. The very claim on which the plaintiffs prevailed was that the defendants had implemented such a policy in violation of the APA, *id.* at 763–64, and the defendants' false denial concerned facts lying at the very heart of their justification for defending the APA claim. This case is thus not remotely similar to *Jean.*